**STINSON LLP**
ROBERT T. KUGLER (Minn. Bar No. 194116)
robert.kugler@stinson.com
EDWIN H. CALDIE (Minn. Bar No. 388930)
ed.caldie@stinson.com
50 S 6th Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DAVID A. TAYOR (Cal. Bar No. 247433)
(dtaylor@kbkllp.com)
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
(galbert@kbkllp.com)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| Interstate Fire & Casualty Company and National Surety Corporation, | Case No. 2:25-cv-02262-WBS |
| | [CORRECTED][1] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE COMMITTEE'S MOTION TO DISMISS APPEAL FOR LACK OF STANDING |
| Appellants, | |
| v. | |
| Roman Catholic Bishop of Sacramento, | *Filed concurrently with Notice of Motion, Motion and [Proposed] Order* |
| Appellee. | Date: October 27, 2025 |
| | Time: 1:30 p.m. |
| | Place: 501 I Street Sacramento, CA 95814 (Courtroom 5, Floor 14) |
| | Judge: Hon. William B. Shubb |

---

[1] The only change to this corrected motion is the substitution of the signatory with Gabrielle L. Albert.

## TABLE OF CONTENTS

I.    INTRODUCTION..........................................4

II.   FACTUAL AND PROCEDURAL BACKGROUND.....................4

III.  LEGAL STANDARDS AND AUTHORITIES.......................7

IV.   ARGUMENT.............................................11

      A.  The Order Does Not Cause Appellants Immediate
          Financial Harm ..................................12

      B.  Appellants Are Not Entitled to the Protections of the
          Automatic Stay ..................................13

V.    CONCLUSION...........................................16

**TABLE OF AUTHORITIES**

**Cases**

*In re A.S. Acquisition Corp.*,
   56 F. App'x 415 (9th Cir. 2003) ........................... 9

*In re Amir*,
   436 B.R. 1 (6th Cir. BAP 2010) ........................... 8

*Matter of Andreuccetti*,
   975 F.2d 413 (7th Cir. 1992) ............................. 8

*In re Brooks*,
   79 B.R. 479 (Bankr. 9th Cir.1987) ....................... 11

*Admiral Ins. Co. v. Grace Indus., Inc.*,
   409 B.R. 275, 283-84 (E.D.N.Y. 2009) .................... 16

*Collins v. Wolf*,
   614 B.R. 589 (S.D. Cal. 2020) ........................ 9, 10

*In re Combustion Eng'g, Inc.*,
   391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23,
   2005) ................................................ 9, 10

*Duckor, Spradling & Metzger v. Baum Tr. (In re*
   *P.R.T.C., Inc.)*,
   177 F.3d 774 (9th Cir. 1999) ............... 4, 7, 8, 10, 11

*Matter of E. Coast Foods, Inc.*,
   80 F.4th 901 (9th Cir. 2023) ......................... 7, 11

*Fondiller v. Robertson (In re Fondiller)*,
   707 F.2d 441 (9th Cir. 1983) ............. 4, 7, 8, 9, 10, 15

*In re Globe Inv. & Loan Co., Inc.*,
   867 F.2d 556 (9th Cir. 1989) ........................ 11, 16

*In re Integrated Knowledge Mktg., Inc.*,
   No. BAP CC-07-1092-PABAK, 2007 WL 7540949 (B.A.P.
   9th Cir. Nov. 6, 2007), *aff'd,* 433 F. App'x 566 (9th
   Cir. 2011) ............................................... 9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................... 8

*McCormack v. Hiedeman*,
   694 F.3d 1004 (9th Cir. 2012) ............................ 8

*In re Murphy*,
    No. 6:17-BK-20442-MW, 2022 WL 2542311 (C.D. Cal.
    June 15, 2022) .......................................... 8

*In re Parker*,
    139 F.3d 668 (9th Cir. 1998) ............................ 11

*In re Pecan Groves of Arizona*,
    951 F.2d 242 (9th Cir. 1991) ............................ 10

*Matter of Point Ctr. Fin., Inc.*,
    890 F.3d 1188 (9th Cir. 2018) ................. 4, 7, 11, 17

*In re Point Ctr. Fin., Inc.*,
    No. SACV 16-1336 DSF, 2016 WL 11723668 (C.D. Cal.
    Aug. 30, 2016) .......................................... 8

*In re Reiff*,
    33 F. App'x 878 (9th Cir. 2002) ......................... 9

*In re Shelton*,
    No. 8:17-BK-12887-SC, 2025 WL 1604946 (B.A.P. 9th
    Cir. June 6, 2025) ................................... 7, 8

*In re Thorpe Insulation Co.*,
    393 F. App'x 467 (9th Cir. 2010) ........................ 9

*In re Thorpe Insulation Co.*,
    677 F.3d 869 (9th Cir. 2012) ............................ 8

*Travelers Ins. Co. v. H.K. Porter Co.*,
    45 F.3d 737 (3d Cir.1995) ............................... 10

*In re Umpqua Shopping Ctr., Inc.*,
    111 B.R. 303 (B.A.P. 9th Cir. 1990) ..................... 10

*In re Upland Partners, a Hawaii Ltd. P'ship*,
    105 F. App'x 182 (9th Cir. 2004) ........................ 9

*In re Valley Bus. Ctr.*,
    204 F. App'x 608 (9th Cir. 2006) ........................ 9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................... 10

**Statutes**

11 U.S.C. § 362................................. 6, 10, 11, 14

1  **I.   INTRODUCTION**

2       The Official Committee of Unsecured Creditors (the

3  "Committee") of the Roman Catholic Bishop of Sacramento (the

4  "Diocese") — the debtor in bankruptcy case number 24-21326 before

5  the Bankruptcy Court for the Eastern District of California (the

6  "Bankruptcy Court") — files this memorandum of points and

7  authorities (the "Memorandum") in support of the Committee's

8  *Motion to Dismiss Appeal For Lack of Standing* (the "Motion to

9  Dismiss"), which is filed concurrently herewith. As argued below,

10 the Court has no subject-matter jurisdiction to hear this appeal

11 (the "Appeal"). Because Appellants are not "person[s] aggrieved""

12 by the Bankruptcy Court's *Order Granting Debtor's Motion to: (1)*

13 *Approve Stipulation Modifying the Automatic Stay; and (2) Waiver*

14 *of 14-Day Stay Period* (the "Order"), Appellants have no standing

15 to appeal it.[2] In support of its Motion to Dismiss, the Committee

16 respectfully states as follows.

17 **II.   FACTUAL AND PROCEDURAL BACKGROUND**

18      The Diocese filed its bankruptcy petition on April 1, 2024

19 (the "Petition Date").[3] On the Petition Date, approximately 260

20 civil actions were pending against the Diocese in state court,

21 including approximately 227 actions (the "State Court Actions")

22 naming both the Diocese and at least one of its affiliates as

23

24

---

25 [2] *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983).
   *See also Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1191 (9th Cir. 2018)
26 ("All circuits, including this one, limit standing to appeal a bankruptcy court
   order to 'person[s] aggrieved' by the order.") (quoting *Duckor, Spradling &*
27 *Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999)).

   [3] *Chapter 11 Voluntary Petition of The Roman Catholic Bishop of Sacramento* [Doc.
28 1], *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr.
   E.D. Cal.).

1  defendants.[4]

2      The Committee was appointed on April 12, 2024.[5] The Committee

3  is made up of nine survivors of sexual abuse ("<u>Survivors</u>") with

4  claims against the Diocese for the devastating harms perpetrated

5  against them as children by clergy and others in the employ of the

6  Diocese. Representing the interests of hundreds of other Survivors

7  with similar claims, the Committee's objective in the bankruptcy

8  case is to reach a global settlement with the Diocese and its

9  insurers (including Appellants) in the form of a plan of

10  reorganization that can be confirmed by the Bankruptcy Court under

11  chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) as

12  quickly as possible.

13      The Diocese's insurers do not share this objective. Instead,

14  the Diocese's insurers (including Appellants) have a financial

15  interest in prolonging the Diocese's bankruptcy as long as

16  possible, for two reasons. First, the longer it takes to confirm

17  a plan, the longer it is before the Diocese's insurers must pay to

18  fund their share of the settlement (or alternatively, the longer

19  it is until post-confirmation litigation against the insurers

20  occurs, if certain insurers decline to settle). In the interim,

21  the insurers make investment gains on those funds by ignoring their

22  contractual obligations to indemnify the Diocese. Second, while

23  the bankruptcy case is ongoing, the Diocese's insurers benefit

24  from the automatic stay imposed by 11 U.S.C. § 362 ("<u>Section 362</u>").

25

26  [4] *Stipulation by and among The Roman Catholic Bishop of Sacramento, the Official Committee of Unsecured Creditors, and the Survivor Defendants* [Doc. 1427] at 2,

27  *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal.).

28  [5] *See Notice of Appointment of Unsecured Creditors' Committee* [Doc. 139], *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal.).

1  The automatic stay stays all legal actions against their

2  policyholder (that is, the Diocese), thereby shielding the

3  insurers from having to pay defense costs or to indemnify the

4  Diocese for any settlements or judgments of the underlying actions.

5  In fact, while the automatic stay remains in force, the insurers

6  have every incentive not to make reasonable settlement offers and

7  every reason to delay the bankruptcy process by any means available

8  to them, including by filing this Appeal.

9      Nearly thirteen months into the bankruptcy case, facing

10  pressure from Survivors in state court, the Diocese filed a

11  complaint and moved for declaratory and injunctive relief

12  extending the automatic stay to all the State Court Actions.[6] The

13  Survivors and the Committee objected.[7] On June 25, 2025, the

14  Diocese, the Survivors, and the Committee reached an agreement in

15  the form of a stipulation (the "Stipulation") to enjoin prosecution

16  of nearly all the State Court Actions but modify the automatic

17  stay such that up to six cases could proceed to trial in state

18  court. The Diocese and Committee ultimately agreed that four of

19  the State Court Actions should be subject to relief from stay (the

20  "Released State Court Actions").[8] After a contested hearing, the

---

[6] *Complaint Seeking Declaratory and Injunctive Relief under Bankruptcy Code Sections 105(a) and 362 that the Automatic Stay Extends to All State Court Cases in which the Debtor is Named as a Defendant and as to all Cases in which a Non-Debtor Affiliate is Named as a Defendant* [Doc. 1] at 1, *The Roman Catholic Bishop of Sacramento v. John S-4 Doe et al. (In re The Roman Catholic Bishop of Sacramento)*, Adversary Proceeding No. 25-02054 (Bankr. E.D. Cal.); *Amended Motion for Order Extending Stay to All State Court Cases in which Debtor and Non-Debtor Affiliates Are Named As Defendants Under Bankruptcy Code Sections 105(a) and 362* [Doc. 34] at 11, *The Roman Catholic Bishop of Sacramento v. John S-4 Doe et al. (In re The Roman Catholic Bishop of Sacramento)*, Adversary Proceeding No. 25-02054 (Bankr. E.D. Cal.).

[7] *See, e.g.*, Docs. 36-79, *The Roman Catholic Bishop of Sacramento v. John S-4 Doe et al. (In re The Roman Catholic Bishop of Sacramento)*, Adversary Proceeding No. 25-02054 (Bankr. E.D. Cal.).

[8] *See Notice of Released State Court Actions Pursuant to Order Approving Compromise and Settlement and Granting Relief From Stay [ECF No. 91]* (Doc. 97),

1  Bankruptcy Court entered the Order approving the Stipulation over

2  the Appellants' objections on July 25, 2025. This Appeal followed.

3  **III. LEGAL STANDARDS AND AUTHORITIES**

4      The law governing appellate standing in bankruptcy is

5  unmistakably clear: "[t]o appeal a bankruptcy court's order, a

6  party must establish Article III standing and that it is aggrieved

7  by the order."[9] From the face of the Appeal, it is clear that the

8  Appellants are not and cannot be aggrieved by the Order approving

9  the Stipulation, so the Appeal must be dismissed.

10     For over forty-two years, standing to appeal a bankruptcy

11  court's order has been, and continues to be, limited to persons

12  aggrieved by the order.[10]

13     Under the person-aggrieved standard, "[o]nly those persons

14  who are directly and adversely affected pecuniarily by an order of

15  the bankruptcy court have been held to have standing to appeal

16  that order."[11] In an effort:

17  _____

18  *The Roman Catholic Bishop of Sacramento v. John S-4 Doe et al. (In re The Roman Catholic Bishop of Sacramento)*, Adversary Proceeding No. 25-02054 (Bankr. E.D. Cal.)

19  [9] *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023) (quotations omitted).

20  [10] *In re Shelton*, No. 8:17-BK-12887-SC, 2025 WL 1604946, at *5 (B.A.P. 9th Cir.

21  June 6, 2025) ("To meet the 'person aggrieved' test, an appellant must show that he or she is 'directly and adversely affected pecuniarily by an order of the bankruptcy court[.]' *Duckor, Spradling & Metzger v. Baum Tr. (In re*

22  *P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999) (quoting *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)).". In fact,

23  this rule of appellate standing pre-dates the Bankruptcy Code. *See Fondiller*, 707 F.2d at 442 ("This rule of appellate standing, the so-called 'person

24  aggrieved' test, derives from section 39c of the Bankruptcy Act of 1898, which permitted appeal by a 'person aggrieved by an order of a referee.' 11 U.S.C. §

25  67(c) (1976) (repealed 1978). It exists to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings. This need springs

26  from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation."). *See*

27  *also Point Ctr. Fin.*, 890 F.3d at 1191 ("All circuits, including this one, limit standing to appeal a bankruptcy court order to 'person[s] aggrieved' by the

28  order.")

[11] *Fondiller*, 707 F.2d at 442.

> [t]o prevent unreasonable delay, courts have created an
> additional prudential standing requirement in bankruptcy
> cases: The appellant must be a "person aggrieved" by the
> bankruptcy court's order. … An appellant is aggrieved if
> "directly and adversely affected pecuniarily by an order
> of the bankruptcy court"; in other words, the order must
> diminish the appellant's property, increase its burdens,
> or detrimentally affect its rights.[12]

As with conventional Article III standing, the party asserting standing to appeal a bankruptcy court's order has the burden of proving they are aggrieved by it, based on the facts as they were at the time the appellant filed the notice of appeal.[13] However, "[t]his 'person aggrieved' requirement is more exacting than the requirements for general Article III standing."[14] Indirect effects are insufficient.[15] Likewise, courts deny standing when an

---

[12] *P.R.T.C.*, 177 F.3d at 777. *See also In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012) ("Appellate standing requires that a party be directly and adversely affected by the order of the bankruptcy court—that it diminish the appellant's property, increase its burdens, or detrimentally affect its rights.") (citing *P.R.T.C.,* 177 F.3d at 777).

[13] *Fondiller*, 707 F.2d at 443 ("To have standing to bring this appeal, appellant must demonstrate that she was directly and adversely affected pecuniarily by the order of the bankruptcy court."); *Shelton*, No. 8:17-BK-12887-SC, 2025 WL 1604946, at *3 (B.A.P. 9th Cir. June 6, 2025) ("As the party invoking federal jurisdiction, [appellant] bears the burden of establishing standing.") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *In re Murphy*, No. 6:17-BK-20442-MW, 2022 WL 2542311, at *4 (C.D. Cal. June 15, 2022) ("An appellant asserting standing to pursue an appeal has the burden of proving that he is a 'person aggrieved.'") (quoting *In re Amir*, 436 B.R. 1, 10 (6th Cir. BAP 2010)); *In re Point Ctr. Fin., Inc.*, No. SACV 16-1336 DSF, 2016 WL 11723668, at *1 (C.D. Cal. Aug. 30, 2016) ("To determine if standing exists, the Court refers to the facts as they stood when the appellant filed a notice of appeal.")(citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1023-24 (9th Cir. 2012)). This Memorandum takes no position on whether Appellants have Article III standing to appeal the Order, and the Committee reserves the right to demonstrate that Appellants do not.

[14] *Matter of Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992); *P.R.T.C. Inc.*, 177 F.3d at 777.

[15] *In re Integrated Knowledge Mktg., Inc.*, No. BAP CC-07-1092-PABAK, 2007 WL 7540949, at *4 (B.A.P. 9th Cir. Nov. 6, 2007), *aff'd,* 433 F. App'x 566 (9th Cir. 2011) ("[T]he direct and adverse pecuniary effect required to confer appellate standing must be immediate."). *See also, e.g., In re A.S. Acquisition Corp.*, 56 F. App'x 415, 416 (9th Cir. 2003) ("Elfman does not have standing because he is not an aggrieved party. … As a limited partner, he has no interest in specific partnership property. And the bankruptcy court's order does not

1    appellant's alleged pecuniary harm is merely "speculative,"[16]

2    "anticipatory"[17] or "entirely contingent on future events that

3    might not occur."[18]

4         This means that, for any particular bankruptcy court order,

5    not all parties in interest have standing to appeal it.[19] Appeals

6    by debtors, creditors, and shareholders are often dismissed for

7    lack of prudential standing when the appellants' interests are not

8    directly and adversely affected,[20] and insurers' appeals are

9    routinely dismissed for the same reason.[21]

10        Notably, courts deny bankruptcy appellate standing where the

11   appellants' only demonstrable interest is a "desire to prevent

12

13   affect Elfman's personal interest in the limited partnership; Elfman's share of
     the partnership remains the same.").

14   [16] *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 222 (3d Cir. 2004), *as amended*
     (Feb. 23, 2005).

15   [17] *Thorpe Insulation Co.*, 393 F. App'x at 470 n. 2 (9th Cir. 2010) ("The
16   abridgement of Appellants' rights has not happened yet, and may never happen.
     The issue is not ripe.").

17   [18] *Collins v. Wolf*, 614 B.R. 589, 594 (S.D. Cal. 2020).

18   [19] *Accord Combustion Eng'g*, 391 F.3d at 217 ("[W]e apply a 'persons aggrieved'
     standard, not a 'party in interest' standard, to determine bankruptcy appellate
     standing."). This Memorandum takes no position on whether Appellants are
19   "parties in interest" under Section 1109(b) of the Bankruptcy Code, and the
     Committee reserves the right to demonstrate that Appellants are not.

20   [20] *See, e.g., In re Reiff*, 33 F. App'x 878, 879 (9th Cir. 2002) ("Generally, if
21   a debtor is 'hopelessly insolvent,' that debtor lacks standing to challenge
     orders that affect the size of the estate.") (quoting *Fondiller v. Robertson
     (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)); *In re Valley Bus. Ctr.*,
22   204 F. App'x 608, 609 (9th Cir. 2006) (dismissing creditor's appeal for lack of
     prudential standing); *In re Upland Partners, a Hawaii Ltd. P'ship*, 105 F. App'x
23   182, 183 (9th Cir. 2004) (dismissing equity holder's appeal for lack of
     prudential standing).

24   [21] *See, e.g., Thorpe Insulation Co.*, 393 F. App'x at 469 ("Courts of appeal
25   routinely deny standing 'to marginal parties involved in bankruptcy proceedings
     who, even though they may be exposed to some potential harm incident to the
26   bankruptcy court's order, are not directly affected by that order.'") (quoting
     *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir.1995));
27   *Combustion Eng'g, Inc.*, 391 F.3d at 217 ("The insurers are not obligated to pay
     amounts exceeding their pre-existing policy limits. So long as claims are paid
     in a manner consistent with the rights and conditions set forth in the subject
28   policies, the Objecting Insurers and London Market Insurers are not 'aggrieved'
     for purposes of bankruptcy appellate standing.").

future litigation."[22] For example, in *Matter of Fondiller*, the Ninth Circuit held that because "appellant's only demonstrable interest in the order is as a potential party defendant in an adversary proceeding … she is not a 'person aggrieved'."[23] Similarly, in *Collins v. Wolf*, the district court found that having to defend against a possible legal argument "is not a burden sufficient to confer standing under the person aggrieved test."[24]

Moreover, even when an appellant is directly affected by an order, prudential standing doctrine requires that the appellant assert its *own* rights and interests, not the rights and interests of others.[25] This requirement is especially relevant to appeals of orders modifying the automatic stay, because:

> the majority of jurisdictions which have considered standing under the automatic stay provision, 11 U.S.C. § 362, have concluded that section 362 is intended solely to benefit the debtor estate. … [T]he stay does not protect the rights of outside parties.[26]

Thus, parties outside the protection of Section 362 do not have standing to assert violations of the automatic stay.[27] Considering this issue on appeal, the Ninth Circuit keenly observed that:

> [t]he appellants' cause of action under section 362 is a disingenuous attempt to use the Bankruptcy Code to

---

[22] *P.R.T.C.*, 177 F.3d at 778.

[23] *Fondiller*, 707 F.2d at 443.

[24] *Collins v. Wolf*, 614 B.R. at 595.

[25] *In re Umpqua Shopping Ctr., Inc.*, 111 B.R. 303, 305 (B.A.P. 9th Cir. 1990) ("Even though directly affected by an appealed order, an appellant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[26] *In re Pecan Groves of Arizona*, 951 F.2d 242, 245 (9th Cir. 1991).

[27] *In re Globe Inv. & Loan Co., Inc.*, 867 F.2d 556, 560 (9th Cir. 1989) ("The legislative history behind section 362 clearly states that section 362 is intended to protect the debtor."); *In re Brooks*, 79 B.R. 479, 481 (Bankr. 9th Cir.1987) ("[I]f the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay.")

> their advantage. … Whatever argument may be made for extending the protection of section 362 to creditors, **it clearly does not confer any rights to outside parties**. … The appellants have attempted to use section 362 as a weapon against the estate.[28]

Consequently, it affirmed the district court's dismissal of the appeal for lack of standing.[29]

Finally, while "[s]tanding is an issue of law that [the Ninth Circuit] review[s] de novo … related factual determinations are reviewed for clear error,"[30] and the question of whether or not "an appellant is a person aggrieved is a question of fact, which [the Ninth Circuit] reviews for clear error."[31]

## IV.   ARGUMENT

Because the Order does not have an immediate, direct, and adverse financial effect on Appellants, this Appeal runs headlong into the foundations of the foregoing authorities and should be dismissed due to Appellants' lack of standing.

Appellants lack standing to challenge the Order for two independent reasons, either of which is sufficient grounds to dismiss this appeal. First, Appellants assert they have no present obligation to defend or indemnify the Diocese based on the relief provided in the Order, meaning Appellants will experience no immediate adverse financial effect. Second, the automatic stay is not designed to protect the financial interests of insurance companies, and lifting the stay does not make Appellants financially worse off than before the Diocese filed its petition.

---

[28] *Globe Inv. & Loan Co.*, 867 F.2d at 560 (emphasis added).

[29] *Id.*

[30] *Point Ctr. Fin.*, 890 F.3d at 1191.

[31] *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023); *P.R.T.C.*, 177 F.3d at 777 (citing *In re Parker*, 139 F.3d 668, 670 (9th Cir. 1998).

A.    **The Order Does Not Cause Appellants Immediate Financial Harm**

To date, Appellants have yet to acknowledge that they are financially obligated to indemnify the Diocese for Survivor claims. Instead, they are operating under a complete reservation of rights to deny coverage for any and all survivor claims, including those released from the automatic stay.[32] Moreover, Appellants contend that under the particular terms of their insurance policies, they have no obligation to even pay the Diocese's defense costs (let alone indemnify a settlement or judgment) until each underlying claim is resolved and coverage for that claim has been determined.[33] As they themselves have made clear, **Appellants believe they have no immediate obligations** in connection with the underlying claims:

> we don't have the obligation to step forward. If the diocese is going to go forward, if there is some necessity for lift stays, in order to get coverage, there

---

[32] *E.g., Transcript of Hearing Wednesday, July 23, 2025 11:00 AM* [Doc. 1482] at 31:15-22, *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal.) (attached here as **Exhibit 1**) (refusing to acknowledge coverage for the claims: "[Interstate Counsel: And the last thing I'll say is a couple of things I'll just touch on in response to what the counsel for the debtor and the committee said. Talking about whether we're going to pay to cover defense, every insurer's different. Interstate, for example, has a right to associate as an indemnity policy. So they think they -- they want us to make commitments that go above and beyond what the policies say, and I think that's not a reasonable thing to ask.").

[33] *Id.* at 34:24-35:3 ("[LMI Counsel]: This isn't a case like -- I'm sorry, like Oakland or San Francisco, where you have insurers with duties to defend and settle. And it may be easier for them to step in and handle these underlying cases. The London program doesn't work like that."); *see also id.* at 35:8-16 ("[LMI Counsel]: And I guess I would just like to point out that my argument about indemnity, I actually argued that indemnity issue in the Northern District of California back in 1994 and prevailed. So I do want to give you that cite. *Save Mart Supermarkets v. Underwriters at Lloyd's*, 843 F.Supp. 597, on Northern District of California, 1994. That found that there is no obligation to pay defense costs as incurred by London Market insurers[;] only if and when there's a determination that the underlying case, there's legal liability and coverage."). Interstate issued excess insurance policies that follow form to the underlying policies issued by LMI. Thus, the Interstate policies generally are subject to the provisions of the LMI policies and should be interpreted and applied in the same manner as the LMI policies.

1    is an obligation to cooperate. **They [i.e., the Diocese] have the obligation to defend and settle**.[34]

2    As a result, Appellants cannot demonstrate an immediate effect

3    from the Order that is adverse to their pecuniary interests.

4    Instead, any purported harm is anticipatory, speculative, or not

5    related to rights held by the Appellants.

6        Even if Appellants could articulate an immediate financial

7    interest in the Order, the Order says nothing about Appellants or

8    their rights, which remain the same as they were before the Order

9    was entered. Plainly then, the Order has not diminished Appellants'

10   property, increased their pre-bankruptcy burdens, or detrimentally

11   affected their rights.[35] Therefore, Appellants are not, and cannot

12   be, adversely affected by the Order in the sense necessary to

13   qualify as an aggrieved party. For these reasons, the Appeal should

14   be dismissed for Appellants' lack of standing.

15   **B.    Appellants Are Not Entitled to the Protections of the**
16   **        Automatic Stay**

17       The Order does not and cannot affect Appellants directly

18   because Appellants are not entitled to the benefits of the

19   automatic say. Appellants are not the parties that Section 362 is

20   designed to protect.[36] Section 362 is designed to protect a debtor's

21   bankruptcy estate for the benefit of creditors.[37] Peripheral third

---

22

23   [34] *Id.* at 34:17-21 (emphasis added). *See also id.* at 33:19-34:14 ("[LMI Counsel]:
     The London Market policies in this particular case, just like a lot of those
24   other dioceses, are very different. They are excess indemnity policies under a
     self-insurance program. There is no duty to defend or settle, just a duty to
25   indemnify at the end of the case. We're not sitting in the beach basking in the
     sun. We're not refusing to pay defense costs because we don't have the obligation
26   to defend or settle."). Again, the Interstate policies generally are subject to
     the provisions of the LMI policies and should be interpreted and applied in the
     same manner as the LMI policies.

27   [35] *See P.R.T.C.*, 177 F.3d at 777.

28   [36] *See Pecan Groves*, 951 F.2d at 245.

     [37] *See id.*

parties are not entitled to protections of the stay.[38] Appellants are peripheral third parties not entitled to the protections of the automatic stay, and they have no standing to challenge an Order modifying the rights of the Debtor and its actual creditors.

Rather than asserting Appellants' own rights,[39] this Appeal is itself an effort to weaponize the automatic stay, delay the bankruptcy process, and postpone Appellants' obligations to take financial responsibility for the wrongdoing of their policyholders. This is exactly the kind of dilatory, enervating litigation that prudential appellate standing is designed to prevent.[40]

Had the Diocese never filed for bankruptcy, the automatic stay provided by Section 362(a) would not exist, and the Released State Court Actions would have proceeded towards trial years ago. In that scenario, as the cases progressed, Appellants **might** have become obligated to admit or deny coverage for Survivors' claims, to pay defense costs, and/or to accept reasonable settlement demands or face consequences for failing to do so. Instead, the automatic stay came into effect on the Petition Date. As a result, none of the State Court Cases could proceed, so Appellants were

---

[38] *See Globe Inv. & Loan Co.*, 867 F.2d at 560.

[39] *See Transcript of Hearing Wednesday, July 23, 2025 11:00 AM* [Doc. 1482] at 29:6-17, *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal.) (attached here as **Exhibit 1**):

    MR. WEISS: … And that seems unfair and prejudicial among the various survivor defendants.
    THE COURT: Are you representing them?
    …
    MR. WEISS: I do not represent the survivor --
    THE COURT: Oh, okay.
    MR. WEISS: -- defendants in this case.
    THE COURT: I thought they were -- you were beginning to talk like they're your clients.

[40] *See Fondiller*, 707 F.2d at 442.

gratuitously shielded from having to confront their contractual duties and obligation and have remained on holiday for more than two years.[41]

By releasing the Released State Court Actions from the stay, the Order simply puts Appellants into the position they would have been in had the bankruptcy petition never been filed: namely, having to defend or settle lawsuits in accordance with the terms and conditions of any implicated insurance policies.[42] Relative to the pre-Petition Date status quo, Appellants are not affected by the Order at all. Rather, the Order simply eliminates the unjust benefit afforded Appellants by the protections of the automatic stay — protections that are not intended to shield Appellants in the first place.[43] Because the Appellants were never entitled to the protections of the automatic stay, they cannot be aggrieved by the Order modifying the stay to allow the Released State Court Actions to move forward. For these reasons, the Appellants are not

---

[41] *See Memorandum Order on Motion to Authorize Presentation of Survivor Statements* [Doc. 1153] at 4-5, *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal.) (attached here as **Exhibit 2**) ("The first relevant point regarding the insurers is that they are now basking in the shelter of the automatic stay, without which, they would be paying for legions of defense counsel… The second relevant point is that the insurers during this case have sought to cadge as much information as possible about the individual plaintiffs while they are enjoying their free ride on the automatic stay.").

[42] *Cf. Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275, 283-84 (E.D.N.Y. 2009) (rejecting argument that debtor violated policy's cooperation clause by agreeing to lift the stay to permit state-court personal injury actions against it: "To be sure, these stipulations do not impinge on Admiral's ability to defend the actions . . . The stipulations do not acknowledge liability nor do they set recovery amounts. Admiral, on this record, has failed to establish that Grace has breached the policy's cooperation clause in any way."). In fact, Appellants are still better off than if the bankruptcy petition had never been filed, because they only have to defend the four Released State Court Actions rather than all 260 actions that were pending on the Petition Date. *See Notice of Released State Court Actions Pursuant to Order Approving Compromise and Settlement and Granting Relief From Stay [ECF No. 91]* (Doc. 97), *The Roman Catholic Bishop of Sacramento v. John S-4 Doe et al. (In re The Roman Catholic Bishop of Sacramento)*, Adversary Proceeding No. 25-02054 (Bankr. E.D. Cal.).

[43] *See Globe Inv. & Loan Co.*, 867 F.2d at 560.

1  aggrieved by the Order, and the Appeal should be dismissed for

2  lack of standing.

3  **V.    CONCLUSION**

4      For all the foregoing reasons, Appellants are not and cannot

5  be "persons aggrieved" in the sense necessary for standing to

6  appeal the Order.[44] On that basis, and for the sake of Survivors

7  and the greater Catholic community of Sacramento, the Committee

8  urges the Court to grant the Motion to Dismiss.

9                          Respectfully submitted,

10 Date: September 23, 2025    */s/ Gabrielle L. Albert*
                            TOBIAS S. KELLER (CA # 151445)
11                          DAVID A. TAYOR (CS # 247433)
                            GABRIELLE L. ALBERT (CA # 190895)
12                          101 Montgomery Street, Suite 1950
                            San Francisco, California 94104
13                          Telephone: (415) 496-6723
                            Facsimile: (650) 636-9251
14                          Email:tkeller@kbkllp.com
                                   dtaylor@kbkllp.com
15                                 galbert@kbkllp.com

16                          Robert T. Kugler (MN # 194116)
17                          Edwin H. Caldie (MN # 388930)
                            Stinson LLP
18                          50 South Sixth Street, Suite 2600
                            Minneapolis, MN 55402
19                          Main: 612-335-1500
                            Facsimile: 612-335-1657
20                          Email:robert.kugler@stinson.com
21                                 ed.caldie@stinson.com

22                          *Counsel for the Official Committee*
                            *of Unsecured Creditors*
23
24                          Timothy W. Burns (WI #
                            1068086)(pro hac vice forthcoming)
25                          Jesse J. Bair (WI # 1083779)(pro
                            hac vice forthcoming)
26                          Burns Bair LLP
                            10 E. Doty St., Suite 600
27                          Madison, WI 53703

28  _____
[44] *Point Ctr. Fin.*, 890 F.3d at 1191.

1

Main: 608-286-2302
Email: tburns@burnsbair.com
            jbair@burnsbair.com

2

3

*Special Insurance Counsel for the
Official Committee of Unsecured
Creditors*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **STINSON LLP**
    ROBERT T. KUGLER (Minn. Bar No. 194116)
2   robert.kugler@stinson.com
    EDWIN H. CALDIE (Minn. Bar No. 388930)
3   ed.caldie@stinson.com
    50 S 6th Street, Suite 2600
4   Minneapolis, Minnesota 55402
    Telephone: (612) 335-1500
5
    **KELLER BENVENUTTI KIM LLP**
6   TOBIAS S. KELLER (Cal. Bar No. 151445)
    (tkeller@kbkllp.com)
7   DAVID A. TAYOR (Cal. Bar No. 247433)
    (dtaylor@kbkllp.com)
8   GABRIELLE L. ALBERT (Cal. Bar No. 190895)
    (galbert@kbkllp.com)
9   101 Montgomery Street, Suite 1950
    San Francisco, California 94104
10  Telephone: (415) 496-6723
    Facsimile: (650) 636-9251
11
    *Counsel for the Official Committee of Unsecured Creditors*
12

13              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
14                    **SACRAMENTO DIVISION**

15  Interstate Fire & Casualty          Case No. 2:25-cv-02262-WBS
    Company and National Surety
16  Corporation,                        **NOTICE OF MOTION AND MOTION TO**
                                        **DISMISS APPEAL FOR LACK OF STANDING**
17
                    Appellants,         *Filed concurrently with*
18                                       *Memorandum of Points and*
         v.                              *Authorities and [Proposed]*
19                                       *Order*
    Roman Catholic Bishop of
20  Sacramento,                         Date: October 27, 2025
                                        Time: 1:30 p.m.
21                  Appellee.           Place: 501 I Street
                                        Sacramento, CA 95814
22                                      (Courtroom 5, Floor 14)
23                                      Judge: Hon. William B. Shubb
24

25       **PLEASE TAKE NOTICE** that on October 27, 2025 at 1:30 p.m. in

26  Courtroom 5 in the above-captioned court, located at 501 I Street,

27  Suite  4-200,  14th  Floor,  Sacramento,  CA  95814,  before

28  the Honorable William B. Shubb, Appellee The Official Committee of

1  Unsecured Creditors (the "**Committee**") by and through its

2  undersigned counsel, will, and hereby does, move to dismiss (the

3  "**Motion to Dismiss**") the Appellant's appeal for lack of standing.

4  Opposition, if any, to the granting of this Motion to Dismiss must

5  be filed and served on or before October 3, 2025. This Motion to

6  Dismiss is based on the Committee's Memorandum of Points and

7  Authorities (filed concurrently herewith) and the record in this

8  case.

Respectfully submitted,

9

10  Date: September 23, 2025        */s/ Gabrielle L. Albert*

11
                              TOBIAS S. KELLER (CA # 151445)
12                            DAVID A. TAYOR (CS # 247433)
                              GABRIELLE L. ALBERT (CA # 190895)
13                            101 Montgomery Street, Suite 1950
                              San Francisco, California 94104
14                            Telephone: (415) 496-6723
                              Facsimile: (650) 636-9251
15                            Email:tkeller@kbkllp.com
                                    dtaylor@kbkllp.com
16                                  galbert@kbkllp.com

17                            Robert T. Kugler (MN # 194116)
                              Edwin H. Caldie (MN # 388930)
18                            Stinson LLP
                              50 South Sixth Street, Suite 2600
19                            Minneapolis, MN 55402
                              Main: 612-335-1500
20                            Facsimile: 612-335-1657
                              Email:robert.kugler@stinson.com
21                                  ed.caldie@stinson.com

22

23

24

25

26

27

28