Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

**STINSON LLP**
ROBERT T. KUGLER (Minn. Bar No. 194116)
robert.kugler@stinson.com
EDWIN H. CALDIE (Minn. Bar No. 388930)
ed.caldie@stinson.com
50 S 6th Street, Suite 2600
Minneapolis, Minnesota 55402

Telephone: (612) 335-1500

**KELLER BENVENUTTI KIM LLP**
TOBIAS S. KELLER (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
DAVID A. TAYOR (Cal. Bar No. 247433)
(dtaylor@kbkllp.com)
GABRIELLE L. ALBERT (Cal. Bar No. 190895)
(galbert@kbkllp.com)
101 Montgomery Street, Suite 1950
San Francisco, California 94104
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel for the Official Committee of Unsecured Creditors*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| Interstate Fire & Casualty Company and National Surety Corporation, et al. | Civil Case Nos. |
| | 2:25-cv-02262-WBS (lead case) |
| Appellants, | 2:25-cv-02288 WBS |
| v. | **REPLY IN SUPPORT OF THE COMMITTEE'S MOTIONS TO DISMISS APPEALS FOR LACK OF STANDING** |
| The Roman Catholic Bishop of Sacramento, | |
| Appellee. | Date: October 27, 2025 |
| | Time: 1:30 p.m. |
| | Place: 501 I Street |
| | Sacramento, CA 95814 |
| | (Courtroom 5, Floor 14) |
| | Judge: Hon. William B. Shubb |

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

## TABLE OF CONTENTS

I.    ARTICLE III BARS THIS APPEAL............................... 5

  A.  Appellants have not Suffered an Injury-in-Fact............ 6

  B.  A Future Injury-in-Fact is Neither Imminent nor Certainly
      Impending............................................ 11

II.   THE PERSON-AGGRIEVED STANDARD BARS THIS APPEAL........... 14

  A.  Neither *Lexmark* nor *Kaiser Gypsum* Dispensed with the "Person
      Aggrieved" Standard.................................. 14

  B.  Neither Appellant has Demonstrated They are Aggrieved by the
      Order................................................ 19

III.  CONCLUSION........................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Grace Indus., Inc.*,
    409 B.R. 275 (E.D.N.Y. 2009) .................................9

*Agostini v. Felton*,
    521 U.S. 203 (1997) .......................................18

*In re Barrett*,
    833 F. App'x 668 (9th Cir. 2020) ......................15, 16

*In re Bauman*,
    2025 WL 1784626 (S.D. Cal. June 27, 2025) ..................15

*In re Brooks*,
    79 B.R. 479 (Bankr. 9th Cir.1987) .........................17

*In re California Pizza Kitchen Data Breach Litig.*,
    129 F.4th 667 (9th Cir. 2025) .............................14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................14

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) .......................................14

*Matter of E. Coast Foods, Inc.*,
    80 F.4th 901 (9th Cir. 2023) .......................6, 15, 18

*Fireman's Fund Ins. Co. v. City of Lodi, California*,
    302 F.3d 928 (9th Cir. 2002), *as amended on denial
    of reh'g and reh'g en banc* (Oct. 8, 2002) .................12

*In re Globe Inv. & Loan Co., Inc.*,
    867 F.2d 556 (9th Cir. 1989) ..............................17

*Hernandez v. Sonoma-Marin Area Rail Transit Dist.*,
    2022 WL 3348574 (N.D. Cal. Aug. 12, 2022) .................14

*In re Hernandez*,
    2023 WL 8453137 (B.A.P. 9th Cir. Dec. 6, 2023) ...........15

*In re Homesite Holdings LLC*,
    2024 WL 5256302 (B.A.P. 9th Cir. Dec. 31, 2024) ..........15

*Intl. Partners for Ethical Care Inc v. Ferguson*,
    146 F.4th 841 (9th Cir. 2025) .......................6, 7, 11

*Lexmark Int'l v. Static Control Components, Inc.*,
  571 U.S. 118 (2014) ................................14, 15, 16

*In re Linett*,
  2023 WL 8813825 (B.A.P. 9th Cir. Dec. 20, 2023) .............15

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................6, 11

*In re Mark Techs. Corp.*,
  2024 WL 1253793 (9th Cir. Mar. 25, 2024) ...................15

*In re Mehr Grp. of Companies Holding, Inc.*,
  2024 WL 3876299 (B.A.P. 9th Cir. Aug. 20, 2024) .............15

*Munns v. Kerry*,
  782 F.3d 402 (9th Cir. 2015) ...............................14

*In re P.R.T.C., Inc.*,
  177 F.3d 774 (9th Cir. 1999) ...............................18

*Matter of Petrone*,
  754 F. App'x 590 (9th Cir. 2019) .......................15, 16

*Matter of Point Ctr. Fin., Inc.*,
  890 F.3d 1188 (9th Cir. 2018) ..............................15

*In re Richards*,
  2023 WL 8931296 (B.A.P. 9th Cir. Dec. 27, 2023) .............15

*Roberts v. Home Ins. Indem. Co.*,
  48 Cal.App.3d 313 (Cal. App. 1st Dist. 1975) ...............12

*In re Roman Cath. Diocese of Syracuse*,
  665 B.R. 866 (Bankr. N.D.N.Y. 2024) .....................5, 18

*In re Shelton*,
  2025 WL 1604946 (B.A.P. 9th Cir. June 6, 2025) .............15

*In re: The Roman Catholic Archbishop of San Francisco*,
  Case No. 23-30564-DM (Bankr.N.D. Cal., Aug. 21,
  2023) ...................................................9, 10

*In re Theos Fedro Holdings, LLC*,
  2023 WL 8802541 (Bankr. App. 9th Cir. Dec. 20, 2023) 6, 15, 18,
  19, 20

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................14

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
  602 U.S. 268 (2024) ...........................14, 15, 17, 18

*United States SEC. v. Barry*,
  146 F.4th 1242 (9th Cir. 2025) ...............................10

*In re VoIP Guardian Partners I, LLC*,
  2024 WL 3520151 (B.A.P. 9th Cir. July 24, 2024) .............15

**Statutes**

11 U.S.C. § 362.........................................16, 17

**REPLY[1]**

Appellants are unaffected by the Bankruptcy Court's Order and therefore lack standing to appeal it. This is true whether the Court views Appellants' interests through the lens of Article III or the Ninth Circuit's longstanding and binding "person aggrieved" precedents.[2] Accordingly, both Appeals should be dismissed.

## I.  ARTICLE III BARS THIS APPEAL

As noted in the Motions to Dismiss, the law governing appellate standing in bankruptcy is unmistakably clear: "[t]o

---

[1] The Official Committee of Unsecured Creditors (the "Committee") of the Roman Catholic Bishop of Sacramento (the "Debtor") — the debtor in bankruptcy case number 24-21326 before the Bankruptcy Court for the Eastern District of California (the "Bankruptcy Court") — files this omnibus reply (this "Reply") to (i) *The Interstate Insurers' Response in Opposition to the Committee's Motion to Dismiss Appeal for Lack of Standing* [Docket No. 28][1] filed by Interstate Fire & Casualty Company and National Surety Corporation ("Interstate"); and (ii) *Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies' Opposition to Motion to Dismiss Appeal for Lack of Standing* [LMI Dkt., Docket No. 16] (collectively with [Docket No. 28], the "Objections") filed by Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies ("LMI," and collectively with Interstate, "Appellants").

As used herein, unless otherwise indicated, references to "[Docket No. ___, pp. ___]" are references to filings in the docket captioned *Interstate Fire & Casualty Company and National Surety corporation, et al., v. The Roman Catholic Bishop of Sacramento*, Case No. 2:25-cv-02262 WBS.

References to "[LMI Dkt., Docket No. ___, pp. ___]" are references to filings in the docket captioned *Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies v. The Roman Catholic Bishop of Sacramento*, Case No. 2:25- cv-02288 WBS, which has been consolidated with the above-captioned matter.

References to "[Bankr. Dkt., Docket No. ___, pp. ___]" are references to filings in the docket captioned *In re The Roman Catholic Bishop of Sacramento*, Case No. 24-21326 (Bankr. E.D. Cal.) presently pending before the Bankruptcy Court.

Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Order or in the Motions to Dismiss, as applicable.

[2] *In re Theos Fedro Holdings, LLC*, 2023 WL 8802541, at *3 n.8 (Bankr. App. 9th Cir. Dec. 20, 2023).

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

appeal a bankruptcy court's order, a party must establish Article III standing *and* that it is [a person] aggrieved by the order."[3]

The "irreducible constitutional minimum" of Article III standing requires, *inter alia*, a showing of a "concrete and particularized" injury that is either: (i) presently existing; or (ii) "imminent, or *certainly* impending."[4]

Appellants have not made this showing. Any alleged injuries stemming from the Order are either nonexistent, not legally cognizable under binding precedent, or conditioned upon the occurrence of numerous events that may or may not occur. This failure warrants the dismissal of both Appeals.

**A.   Appellants have not Suffered an Injury-in-Fact.**

Appellants point to two aspects of the Order that they believe have caused them injury:

  i.   the fact that the Order "provides that the plaintiffs may only enforce judgments against the insurance policies and proceeds [thereof]" such that "the Debtor and [its] Affiliates no longer face the possible economic loss [] that incentivizes a robust defense," [LMI Dkt., Doc. 18, p. 19]; [Docket No. 28, pp. 16-17]; and

---

[3] *Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023) (quotations omitted) (emphasis added); *see also In re Theos Fedro Holdings, LLC*, 2023 WL 8802541, at *3 n.8 ("[T]here is no need here to assess whether Achilles is a person aggrieved given our determination that Achilles lacks Article III standing.").

[4] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[A]n invasion of a legally protected interest . . . [must be] actual or imminent, not conjectural or hypothetical[.]") (cleaned up); *Intl. Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 851 (9th Cir. 2025) ("[I]n the absence of a present injury, plaintiffs may satisfy standing by showing that they face a future injury that is imminent, or *certainly* impending.") (quotations omitted) (emphasis in original).

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

ii.   the fact that the Order lacks "insurance neutrality language" preserving Appellants' rights and the Debtor's obligations under the policies issued by Appellants, [LMI Dkt., Doc. 18, p. 19]; [Docket No. 28, pp. 16-17].

However, neither of these aspects (nor any other feature of the Order) have caused Appellants any "injury that is imminent, or *certainly* impending."[5]

As a threshold matter, the Debtor's assets are not "cordon[ed] off" from the Released State Court Actions such that the Debtor is "less incentivized to defend against claims and cooperate with [Appellants]."[6] Indeed, the results of these four cases will almost certainly impact the ultimate amount of money the Debtor agrees to pay to resolve its exposure for *all* Survivor claims in the context of the bankruptcy. Limiting collection in the Released State Court Actions only to insurance assets does not insulate the Debtor from its liability for those claims in the bankruptcy (as part of payments made under a plan) or from the implications of verdicts on the value of non-released claims.

The Debtor thus has a very real pecuniary stake in the adjudication and defense of the Released State Court Actions, even if a judgment obtained in those cases is not presently enforceable against non-insurance assets.[7] Any argument to the contrary ignores the Debtor's sweeping exposure to liability that lies at the very

---

[5] *Intl. Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 851 (9th Cir. 2025) ("[I]n the absence of a present injury, plaintiffs may satisfy standing by showing that they face a future injury that is imminent, or *certainly* impending.") (quotations omitted) (emphasis in original).

[6] [Docket No. 28, pp. 16-17]; [LMI Dkt., Doc. 18, p. 19].

[7] As explained *infra*, even if the Debtor was "less incentivized to defend against claims" such that the Order "shift[ed] the Debtor's pecuniary risk to [Appellants]" as Appellants allege (*see* [LMI Dkt., Doc. 18, pp. 18-19]; [Docket No. 28, p. 17]), an increased risk of future harm does not, in and of itself, create a legally cognizable injury.

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

center of this bankruptcy. Moreover, Appellants' contentions ignore that the Debtor may have an intense moral and reputational interest in defending against allegations that the Debtor was liable for the horrific sexual abuse of children, regardless of its financial liability for those claims.

Next, the Order's lack of "insurance neutrality language" does not somehow "detrimentally affect" Appellants' rights under the policies issued to the Debtor and the Non-Debtor Affiliates. Appellants have constructed this argument out of whole cloth, by implying the Order imposes new liabilities on Appellants. This argument has no basis in the language of the Order. If the Debtor or a Non-Debtor Affiliates fails to defend itself – or fails to satisfy any other conditions Appellants believe negate coverage – Appellants are free to raise those failures as coverage defenses *just like they could outside of bankruptcy.* Indeed, the Order lifts the automatic stay to permit the Debtor to pay for the costs of defense,[8] allowing the Debtor and the Non-Debtor Affiliates to satisfy their defense obligations under the policies issued by Appellants.

Appellants make much of the fact that the Order permits Survivors to encumber insurance assets.[9] Appellants simply misread

---

[8] *See* [Bankr. Dkt., Docket No. 1484, p. 7].

[9] *See, e.g.,* [Docket No. 28, p. 12] ("The [Order], in other words, permits (and arguably encourages) the attachment and enforcement of liens on the Interstate Insurers' policies. It is difficult to imagine a more quintessential financial harm to intangible property.") (citations omitted); [LMI Dkt., Docket No. 18, p. 13] ("While [Survivors] cannot enforce judgments by creating liens against the Debtor's and Related Entities non-insurance assets, the [Order] explicitly allows [Survivors] to create liens to attach to the insurance policies or insurance policy proceeds.").

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

the Order as a *per se* imposition of liability rather than a modification of a stay to permit future action.

Paragraph 3(d) of the Order says that "nothing in this Order should be construed to *prevent* a lien from attaching to the Debtor's and/or any Non-Debtor Affiliate's insurance policies or the proceeds of such policies."[10] The Order cannot, however, be read to create rights that do not exist under state law. As mentioned in the Motions to Dismiss, the question of whether liens on insurances assets are warranted was not before the Bankruptcy Court and is not before this Court now; rather, as the Order makes clear, it is a question reserved for the California judges presiding over the Released State Court Actions.

Moreover – as Appellants are aware – the effect of the limiting language in paragraph 3(d) of the Order (quoted in the preceding paragraph) is conditioned upon a Survivor's successful prosecution of a Released State Court Action. The Order thus does not guarantee the encumbrance of the Debtor's insurance assets, just as it does not guarantee that a Survivor will receive a favorable judgment.

Simply put, nothing in the Order affects, impairs, or even mentions Appellants' rights under their policies with the Debtor and its Non-Debtor Affiliates.[11]

In effect, lifting the stay puts Appellants in the same position they would have occupied if the Debtor had not filed for

---

[10] [Bankr. Dkt., Docket No. 1484] (emphasis added).

[11] *See generally* [Bankr. Dkt., Docket No. 1484].

bankruptcy in the first place.[12] Indeed, Appellants are actually in a *better* position than they were pre-petition, as the vast majority of Survivor claims remain stayed under the Order — a benefit Appellants would not receive outside of bankruptcy.[13]

As a final matter, Interstate argues that the Order "does not otherwise authorize the Interstate Insurers to act in accordance with their policies" which, in turn, "raises serious questions as to whether [Interstate] may . . . conduct an investigation in response to a settlement demand, associate into [sic] the defense of a Released State Court Action, or even contest a lien on their policies."[14] Interstate thus believes that the Order's "failure to lift the stay fully for [] Interstate . . . detrimentally affects [its] rights, under any sense of the word."[15]

This argument is meritless. The fact that Appellants may one day raise arguments regarding the conduct permitted by the Order does not create an injury-in-fact now. As the Bankruptcy Court for the Northern District of California (albeit in a different procedural posture) recently observed:

---

[12] *See, e.g.*, *Admiral Ins. Co. v. Grace Indus., Inc.*, 409 B.R. 275, 283-84 (E.D.N.Y. 2009) (rejecting argument that debtor violated policy's cooperation clause by agreeing to lift the stay to permit state-court personal injury actions against it: "To be sure, these stipulations do not impinge on Admiral's ability to defend the actions . . . The stipulations do not acknowledge liability nor do they set recovery amounts. Admiral, on this record, has failed to establish that Grace has breached the policy's cooperation clause in any way.").

[13] *See In re: The Roman Catholic Archbishop of San Francisco*, Case No. 23-30564-DM (Bankr.N.D. Cal., Aug. 21, 2023), [Docket No. 1392, p. 2] ("The court is aware that th[e] automatic stay represents potentially large savings to th[e] insurers."); *id.*, n.2 ("It is a broadly accepted concept that 'money is worth more today than the same nominal amount in the future because that money could be put to use by its owner in the meantime.'") (quoting *United States SEC. v. Barry*, 146 F.4th 1242, 1263 (9th Cir. 2025)).

[14] [Docket No. 28, p. 17].

[15] *Id.* (cleaned up).

> That the Insurers now, after *two years of benefitting from the Debtor's automatic stay*, may have to perform some of their contractual obligations regarding a smaller number of lawsuits than they would have otherwise had to if the Debtor lost its request for injunctive relief is not an injury. The Insurers will also not suffer harm by receiving settlement demands. There is no requirement that the Insurers pay those demands sight unseen, and to the extent the stay may need to be modified to evaluate those demands, *the Insurers could seek such relief*.[16]

For this reason, and for all the reasons set forth above, Appellants have not demonstrated the existence of a legally cognizable injury-in-fact arising from the Order.

**B.    A Future Injury-in-Fact is Neither Imminent nor Certainly Impending.**

It is hornbook law that "in the absence of a present injury, [a party] may satisfy standing by showing that they face a future injury that is imminent, or *certainly* impending."[17] For at least three reasons, neither Appellant has made this showing.

First, according to Appellants, their insurance contracts require the Debtor and Non-Debtor Affiliates to "defend and administer claims" on their own dime.[18] Accordingly, the Debtor and

---

[16] *See In re: The Roman Catholic Archbishop of San Francisco*, Case No. 23-30564-DM (Bankr. N.D. Cal., Aug. 21, 2023), [Docket No. 1392, p. 6] (emphasis added) (attached hereto as **Exhibit 1**).

[17] *Intl. Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 851 (9th Cir. 2025) (quotations omitted, emphasis in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 n.2 (1992)); *see also Lujan*, 504 U.S. at 562 n.2 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is *not too speculative* for Article III purposes—that the injury is *certainly* impending . . . we have insisted that the injury proceed with a *high degree of immediacy*, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.") (cleaned up, emphasis added).

[18] *See* [LMI Dkt., Docket No. 18, p. 7]; *see also* [Docket No. 28, p. 5] ("Th[e] [Interstate] policies . . . do not impose a duty to defend."); *id.* at p. 16 ("[T]he [Interstate] policies are framed around the assumption (*and requirement*) that the insured will vigorously defend itself against claims.") (emphasis added).

not the Appellants will not bear the cost of defending the Released State Court Actions prior to judgment.[19]

Second, California is not a direct action state; under California Insurance Code section 11580(b)(2), a plaintiff cannot assert a pre-judgment action directly against an insurer, and must instead wait until a judgment is rendered against the insured.[20] Consequently, a Survivor cannot name Appellants or assert a right to insurance assets until they have a judgment in hand. The prosecution and adjudication of the Released State Court Actions therefore will not (and, as a matter of law, could not) implicate Appellants prior to judgment.

Third, according to Appellants, any potential payouts under their policies are conditioned entirely on the Debtor and Non-Debtor Affiliates performing their obligations in accordance with the terms of their policies.[21] These obligations include:

---

[19] All parties were, of course, cognizant of this fact, and the Order addresses the funding of the Debtors' costs of defense accordingly. *See* [Bankr. Dkt., Docket No. 1484, p. 7] ("The Debtor is authorized to pay defense costs in the Released State Court Actions that are not paid by an insurer, notwithstanding any prior order of the Court.").

[20] *See Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 955-56 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Oct. 8, 2002) ("[G]reater authority [] suggest[s] that § 11580 sets forth the *exclusive set of circumstances* under which a third-party claimant may directly sue another policyholder's liability insurer.") (emphasis added) (collecting cases); *Roberts v. Home Ins. Indem. Co.*, 48 Cal.App.3d 313, 318 (Cal. App. 1st Dist. 1975) ("[I]n the absence of a special provision in the policy, or a statute, authorizing a direct action, an action against the insurer must await a judgment against the insured.").

[21] Notably, Appellants indicated as much before the Bankruptcy Court. *See* [Docket No. 26-1, p. 35] ("[W]e don't have the obligation to step forward. If the diocese is going to go forward, if there is some necessity for lift stays, *in order to get coverage*, there is an obligation to cooperate. They [the Debtor] have the obligation to defend and settle.") (emphasis added); *id.* at 34-35 ("The London Market policies in this particular case, just like a lot of those other dioceses, are very different. They are *excess indemnity policies* under a *self-insurance program*. There is no duty to defend or settle, *just a duty to indemnify at the end of the case*. We're not sitting in the beach basking in the sun.") (emphasis added).

> (1) defending claims; (2) notifying [Appellants] of claims; (3) utilizing at all times a third-party claims administration; (4) providing [Appellants] with records; (5) cooperating with [Appellants]; (6) permitting [Appellants]to be associated in the defense of claims; (7) not assigning interests under the [Appellants'] Policies without consent of [Appellants]; (8) making no changes to the agreements except by endorsement; (9) not making false or fraudulent claims [] and performing all material duties [required by Appellants' policies].[22]

Appellants are thus – by their own admission – not obligated to make any payments unless and until the Debtor and the Non-Debtor Affiliates perform under their respective policies.

Finally – and critically – both Objections focus heavily on potential monetary injuries that may (or may not) occur in the months or years following entry of the Order.[23] Appellants are, in short, concerned with the *risks* allegedly posed by the Order.

---

[22] [LMI Dkt., Docket No. 18, p. 8] (describing the "multiple, material conditions [precedent] to coverage under the LMI Policies"); *see also* [Docket No. 28, p. 5] ("The Interstate Insurers contracted with the Debtor to provide *second level* excess liability coverage on an indemnity only (*pay to be paid*) basis[.]") (emphasis added); [Docket No. 26, p. 14 n.33] (noting that "the Interstate policies generally are subject to the provisions of the LMI policies and should be interpreted and applied in the same manner as the LMI policies").

[23] *See, e.g.*, [LMI Dkt., Doc. 18, p. 6] ("[T]he Stipulation [] provides that a person asserting a negligence claim based upon suffering sexual abuse [] against the Debtor, who, under state law must *first obtain a judgment*, *may* enforce such judgments against insurance policies and the proceeds of insurance policies[.]") (emphasis added); *id.* at p. 17 ("[The Order] provides that [Survivors] *may* obtain a judgment against the Debtor and [the Non-Debtor Affiliates] . . . If the [Order] [] merely intended to allow [Survivors] to pursue any rights they *might* have under applicable state law, it could done without [sic] specifically referring to *possible* judgment enforcement actions[.]") (emphasis added); *id.* at p. 14 (arguing that LMI is a party-in-interest because it bears "*potential* financial responsible for Abuse Claims") (emphasis in original); *see also* [Docket No. 28, p. 6] ("The [Order] . . . *permits* (and arguably encourages) the attachment and enforcement of liens in the Interstate Insurers' policies [following the entry of judgment].") (emphasis added); *id.* at pp. 17-18 ("[The Order] shifts the Debtor's pecuniary *risk* to LMI.") (emphasis added); *id.* at p. 18 ("[B]y only placing insurance assets *at risk*, the LMI burdens are increased[.]") (emphasis added).

However, before these risks can manifest: (i) a Survivor must first litigate an action against the Debtor and/or the Non-Debtor Affiliates, with no involvement from Appellants; (ii) a judgement must first be rendered in a Released State Court Action against the Debtor and/or the Non-Debtor Affiliates; and (iii) coverage must be established for that judgment, including the Debtor and/or the Non-Debtor Affiliates satisfying what Appellants contend are numerous, so-called "material" obligations under Appellants' policies. Any harm to Appellants is thus prospective, conditional, and uncertain, which is legally insufficient to confer standing under Article III.[24] Appellants have failed to demonstrate the existence of an injury that is imminent or certainly impending.

## II.  THE PERSON-AGGRIEVED STANDARD BARS THIS APPEAL

### A.  Neither *Lexmark* nor *Kaiser Gypsum* Dispensed with the "Person Aggrieved" Standard.

Appellants assert that *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.,* 602 U.S. 268 (2024) and *Lexmark Int'l v. Static Control Components, Inc.,* 571 U.S. 118 (2014) collectively "establish that

---

[24] *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 415 (2021) ("The risk of future harm on its own is not enough to support Article III standing[.]"); *Munns v. Kerry*, 782 F.3d 402 (9th Cir. 2015) ("The chain of events that must occur for Bjorlin to be injured . . . is on its face much too attenuated for the threatened injury to be certainly impending or to present a substantial risk of its occurrence.") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 108-09 (1983)); *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 678 (9th Cir. 2025) ("[P]laintiffs must allege a concrete harm, not just an asserted risk of future harm.") (quotations omitted); *Hernandez v. Sonoma-Marin Area Rail Transit Dist.*, 2022 WL 3348574, at *5 (N.D. Cal. Aug. 12, 2022) ("[A]llegations of *possible* future injury or an objectively reasonable likelihood of future injury are insufficient to confer standing . . . Instead, a threatened injury must be *certainly impending* to constitute injury in fact.") (cleaned up, emphasis in original) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409-410 (2013)).

the person aggrieved standard is inapplicable when evaluating whether a party may appeal from a bankruptcy court's decision."[25]

This position is baseless for at least three reasons. First – and most notable – are the overwhelming number of Ninth Circuit and BAP decisions that have consistently and repeatedly applied the "person aggrieved" standard in the wake of both *Lexmark* and *Kaiser Gypsum*.[26] Even if *Lexmark* and *Kaiser Gypsum* could be read

---

[25] [LMI Dkt., Docket No. 18, p. 18] (discussing *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.,* 602 U.S. 268 (2024) and *Lexmark Int'l v. Static Control Components, Inc.,* 571 U.S. 118 (2014)); *see also* [Docket No 28, pp. 11-15] (same).

Notably, Appellants take inconsistent, incomprehensible positions with respect to the standard applicable to a party's appellate standing in the wake of *Kaiser Gpysum*. *Compare* [Docket No. 28, p. 11] ("[Interstate] need *only satisfy Article III* to prosecute this appeal[.]") (emphasis added) *with* [LMI Dkt., Docket No. 18, p. 18] ("In *Kaiser Gypsum,* the Supreme Court implicitly rejected the argument that a party must establish they are person [sic] aggrieved. Instead, a party must demonstrate they are *a party in interest under Section 1109(b).*") (emphasis added).

While it is not the focus of this Reply, as described *infra*, Section 1109 and *Kaiser Gpysum* are wholly inapplicable in the appellate context, particularly where the relevant appeal relates to a lift-stay order. The Committee otherwise reserves all rights to object to Appellants' statutory standing arguments under Section 1109 and *Kaiser Gpysum* as part of its response to the merits of the appeal.

[26] *See, e.g., In re Mark Techs. Corp.*, 2024 WL 1253793, at *1 (9th Cir. Mar. 25, 2024) ("The district court concluded that Jones does not have standing to appeal the Final Fee Order under the 'persons aggrieved' doctrine . . . [and] [t]he district court did not err . . . We have long held that only someone who is 'directly and adversely affected pecuniarily' by a bankruptcy court's order has standing to appeal that order.") (quoting *Matter of Point Ctr. Fin., Inc.*, 890 F.3d 1188, 1191 (9th Cir. 2018)); *Clifton Capital Group, LLC v. Sharp (In re East Coast Foods, Inc.),* 80 F.4th 901, 906 (9th Cir. 2023), *as amended* (Sept. 14, 2023), *cert. denied sub nom., Clifton Cap. Grp., LLC v. Sharp,* 144 S. Ct. 1064 (2024); *In re Barrett*, 833 F. App'x 668, 670 (9th Cir. 2020) ("In this circuit, only a 'person aggrieved,' that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order, has standing to appeal that order."); *Matter of Petrone*, 754 F. App'x 590, 591 (9th Cir. 2019) ("The person-aggrieved test limits standing in bankruptcy appeals to appellants who can show they are directly and adversely affected pecuniarily by the order of the bankruptcy court. *Consistent with the Supreme Court's decision* in *Lexmark* . . . the person-aggrieved test identifies appellants whose interests fall within the zone of interests protected by the law invoked, here, the Bankruptcy Code.") (cleaned up, emphasis added); *In re Shelton*, 2025 WL 1604946, at *4 (B.A.P. 9th Cir. June 6, 2025) ("[O]nly a person aggrieved – that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order – has standing to appeal that order."); *In re Homesite Holdings LLC*, 2024 WL 5256302, at *6 (B.A.P. 9th Cir. Dec. 31, 2024) ("[W]hether an

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

1   to abrogate the "person aggrieved" test (they cannot), the standard

2   nonetheless remains the law of this Circuit and is directly

3   applicable to the issue before the Court.

4       Second, *Lexmark* did not simply "reject[] the prudential

5   standing doctrine."[27] Rather, the Supreme Court recharacterized

6   aspects of its "prudential" precedent – most notably the "zone of

7   interests" test – as a method for determining whether a given

8   statute confers a right of action upon a given plaintiff.[28]

9   Accordingly (and as the Ninth Circuit has observed), application

10  of the "person aggrieved" standard in the context of a bankruptcy

11  appeal is *consistent* with *Lexmark*.[29] This is particularly true

12

13  appellant is a 'person aggrieved' by the order appealed is a question of fact
    we review in the first instance."); *In re Mehr Grp. of Companies Holding, Inc.*,
14  2024 WL 3876299, at *12 (B.A.P. 9th Cir. Aug. 20, 2024) ("'[O]nly a person
    aggrieved, that is, someone who is directly and adversely affected pecuniarily
15  by a bankruptcy court's order, has standing to appeal that order.'"); *In re
    VoIP Guardian Partners I, LLC*, 2024 WL 3520151, at *4 n.8 (B.A.P. 9th Cir. July
16  24, 2024); *In re Richards*, 2023 WL 8931296, at *5 (B.A.P. 9th Cir. Dec. 27,
    2023); *In re Theos Fedro Holdings, LLC*, 2023 WL 8802541, at *4 n.8 (Bankr. App.
    9th Cir. Dec. 20, 2023); *In re Linett*, 2023 WL 8813825, at *3 (B.A.P. 9th Cir.
17  Dec. 20, 2023); *In re Hernandez*, 2023 WL 8453137, at *3 (B.A.P. 9th Cir. Dec.
    6, 2023); *see also In re Bauman*, 2025 WL 1784626, at *3 (S.D. Cal. June 27,
18  2025).

19  [27] [LMI Dkt., Docket No. 18, p. 5].

20  [28] *See Lexmark*, 571 U.S. at 125 ("The parties' briefs treat the question on
    which we granted certiorari as one of 'prudential standing.' *Because we think*
21  *that label misleading*, we begin by *clarifying* the nature of the question at
    issue[.]") (emphasis added); *id.* at 127 ("Static Control . . . argues that we
22  should measure its 'prudential standing' by using the zone-of-interests test.
    Although we admittedly have placed that test under the 'prudential' rubric in
23  the past, it does not belong there[.]") (citations omitted); *id.* ("'[P]rudential
    standing' is a misnomer as applied to the zone-of-interests analysis, which asks
24  whether this particular class of persons has a right to sue under this
    substantive statute.") (cleaned up); *id.* at 128 ("Just as a court cannot apply
25  its independent policy judgment to recognize a cause of action that Congress
    has denied, it cannot limit a cause of action that Congress has created merely
26  because 'prudence' dictates.") (citations omitted).

27  [29] *Matter of Petrone*, 754 F. App'x 590, 591 (9th Cir. 2019) ("The person-
    aggrieved test limits standing in bankruptcy appeals to appellants who can show
28  they are directly and adversely affected pecuniarily by the order of the
    bankruptcy court. *Consistent with the Supreme Court's decision* in *Lexmark* . .
    . the person-aggrieved test identifies appellants whose interests fall within

where, as here, a non-creditor appeals from an order lifting the automatic stay.[30]

Third and finally, *Kaiser Gypsum* held only that an insurer with financial responsibility for payment of claims, in the *confirmation* context, *may* be a "party-in-interest" under Section 1109 of the Bankruptcy Code.[31] The Supreme Court (i) did not address (or even mention) the "party-in-interest" standard in the context of a lift-stay order; (ii) did not address (or even mention) a party's standing to appeal; and (iii) expressly limited its reasoning and its holding to the role Section 1109 plays in a *reorganization proceeding*.[32] As observed by the Bankruptcy Court for the Northern District of New York:

---

the zone of interests protected by the law invoked, here, the Bankruptcy Code.") (cleaned up, emphasis added).

[30] *See, e.g.*, *Petrone*, 754 F. App'x at 591 ("[O]nly a debtor or bankruptcy trustee can appeal an adverse decision by the bankruptcy court under the Bankruptcy Code's section on automatic stays, 11 U.S.C. § 362, because § 362 is intended to protect solely the interests of debtors and their estates."); *In re Barrett*, 833 F. App'x 668, 670 (9th Cir. 2020) ("In this circuit, only a person aggrieved, that is, someone who is directly and adversely affected pecuniarily by a bankruptcy court's order, has standing to appeal that order . . . Thus, the BAP properly invoked the person-aggrieved test, because courts regularly invoke the doctrine when the appellant, like the BoNYM, is a party other than the moving party.") (quotations omitted); *see also In re Globe Inv. & Loan Co., Inc.,* 867 F.2d 556, 560 (9th Cir. 1989) ("The legislative history behind section 362 clearly states that section 362 is intended to protect the debtor."); *In re Brooks,* 79 B.R. 479, 481 (Bankr. 9th Cir.1987) ("[I]f the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack any acts in violation of the automatic stay.")

[31] *See generally Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024).

[32] *See Kaiser Gypsum,* 602 U.S. 268 at 277 ("Courts must determine on a *case-by-case basis* whether a prospective party has a sufficient stake *reorganization proceedings* to be a party in interest[.]") (emphasis added) (quotations omitted); *id.* at 277-78 ("The general theory behind [11 U.S.C. § 1109(b)] is that anyone holding a *direct financial stake* in the outcome of the case should have the opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of *his or her interest*.") (emphasis added); *see also id.* at 272 ("Section 1109(b) of the Bankruptcy Code addresses which stakeholders can participate, and to what extent, in [] *reorganization proceedings*[.]"); *id.* at 284 ("The Court today does not opine on the outer bounds of § 1109. Of course,

The Certain Insurers each argue the Supreme Court's failure to address constitutional and prudential standing in *Truck* is an implicit rejection of these requirements and to hold otherwise violates the broad rights conferred upon them. This Court disagrees. Silence is not rejection, and nothing in *Truck* suggests the Supreme Court intended to eliminate general standing requirements for insurers or any other party in interest. To hold otherwise would upend decades of firmly binding precedent, contrary to the Supreme Court's direction . . . [D]espite several discussions regarding Article III standing during oral argument, the *Truck* decision is *void of any reference to Article III and prudential standing*. In declining to address standing, the ruling in *Truck* is simply an answer to the *narrow Question Presented* and a clarification of who may be a party in interest under § 1109(b)—and not an implicit rejection of the requirement that a party must have prudential and statutory standing[.][33]

Accordingly, *Kaiser Gypsum* is simply inapplicable to the instant Appeals.[34]

For this reason, and for all the reasons set forth above, the "person aggrieved" standard remains good law (in this Circuit and otherwise), and applies in full to the instant Appeals.

---

a party in interest is 'not intended to include literally every conceivable entity that may be involved in or affected by the chapter 11 proceedings.'"); *id.* at 284 ("Truck's [potential] financial exposure . . . is sufficient to give Truck (and other insurers with financial responsibility for bankruptcy claims) a right to voice its objections in *reorganization proceedings*.") (emphasis added); *id.* at 285 ("An insurer with financial responsibility for bankruptcy claims is a 'party in interest' that may object to a *Chapter 11 plan of reorganization*.") (emphasis added).

[33] *See In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866, 875-77 (Bankr. N.D.N.Y. 2024) (emphasis added) (citing *Agostini v. Felton,* 521 U.S. 203, 237-38 (1997)).

[34] As noted *supra*, LMI believes that post-*Kaiser Gypsum*, a party must only demonstrate they are "a party in interest under Section 1109(b)" to have standing to appeal a given order. [LMI Dkt., Docket No. 18, p. 18]. The Committee reserves all rights to challenge LMI (or any party's) statutory standing under Section 1109.

**B.    Neither Appellant has Demonstrated They are Aggrieved by the Order.**

As a final matter, because Appellants lack Article III standing, they necessarily lack appellate standing under the Ninth Circuit's "person aggrieved" standard.[35] Nonetheless, for good measure, it bears re-emphasizing that Appellants cannot be persons aggrieved by the Order because any potential effects on them are indirect, speculative and entirely contingent on future events that may not occur.

As the Committee noted previously:

> As with conventional Article III standing, the party asserting standing to appeal a bankruptcy court's order has the burden of proving they are aggrieved by it, based on the facts as they were at the time the appellant filed the notice of appeal. However, "this 'person aggrieved' requirement is more exacting than the requirements for general Article III standing." Indirect effects are insufficient. Likewise, courts deny standing when an appellant's alleged pecuniary harm is merely "speculative, anticipatory or entirely contingent on future events that might not occur."[36]

Appellants are not "persons aggrieved" for fundamentally the same reasons they lack Article III standing: any harms stemming from the Order are either nonexistent or "speculative, anticipatory or entirely contingent on future events that might not occur."[37]

---

[35] *See In re Theos Fedro Holdings, LLC*, 2023 WL 8802541, at *3 n.8 (Bankr. App. 9th Cir. Dec. 20, 2023) ("[T]here is no need here to assess whether Achilles is a person aggrieved given our determination that Achilles lacks Article III standing.") (citing *Clifton Capital Group, LLC v. Sharp (In re East Coast Foods, Inc.)*, 80 F.4th 901, 906, 910 n.10 (9th Cir. 2023), *as amended* (Sept. 14, 2023), *cert. denied sub nom., Clifton Cap. Grp., LLC v. Sharp*, 144 S. Ct. 1064 (2024)); *see also In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999) ("Bankruptcy cases [] generally affect the rights of many.  To prevent unreasonable delay, courts have created an *additional* [] *standing requirement* in bankruptcy cases: The appellant must be a 'person aggrieved' by the bankruptcy court's order.") (citations omitted, emphasis added).

[36] [Docket No. 26, pp. 9-10] (cleaned up) (collecting cases).

[37] *Id.* at pp. 9-10, 14.

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

More specifically – and as discussed at length in the Motions to Dismiss – Appellants lack standing to appeal the Order because Appellants:

    i.    are "operating under a complete reservation of rights to deny coverage for any and all [S]urvivor claims, including those released from the automatic stay"; and

    ii.    "contend that under the particular terms of their insurance policies, they have no obligation to even pay the Diocese's defense costs (let alone indemnify a settlement or judgment) until each underlying claim is resolved and coverage for that claim has been determined."[38]

Appellants thus believe "they have no immediate obligations in connection with the [] claims" underlying the Released State Court Actions, which necessarily means they "cannot demonstrate an immediate effect from the Order that is adverse to their pecuniary interests."[39] Because the Objections do nothing to refute these facts, the Appeals should be dismissed.

## III. CONCLUSION

For all the foregoing reasons, Appellants: (i) lack Article III standing to appeal the Order; (ii) are subject to the longstanding "persons aggrieved" standard applicable to all appeals from a bankruptcy order; and (iii) are not and cannot be "persons aggrieved" in the sense necessary for standing to appeal the Order.

---

[38] *Id.* at pp. 13-14 (emphasis added).

[39] *Id.* at p. 14.

Docusign Envelope ID: 76C133DE-AFCC-48D8-B3E3-A6CE4AA9EC17

On this basis – and for the sake of Survivors and the greater Catholic community of Sacramento – the Committee urges the Court to grant the Motions to Dismiss.

Respectfully submitted,

Date: October 13, 2025

Robert T. Kugler (MN # 194116)
Andrew J. Glasnovich (MN #0398366)
Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Main: 612-335-1500
Facsimile: 612-335-1657
Email: robert.kugler@stinson.com
       Drew.glasnovich@stinson.com

*Counsel for the Official Committee of Unsecured Creditors*

Timothy W. Burns (WI # 1068086) (pro hac vice forthcoming)
Jesse J. Bair (WI # 1083779) (pro hac vice forthcoming)
Burns Bair LLP
10 E. Doty St., Suite 600
Madison, WI 53703
Main: 608-286-2302
Email: tburns@burnsbair.com
       jbair@burnsbair.com

*Special Insurance Counsel for the Official Committee of Unsecured Creditors*