1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                 ----oo0oo----

11

12    INTERSTATE FIRE & CASUALTY          Nos. 2:25-cv-02262 WBS (lead
      COMPANY AND NATIONAL SURETY         case)
13    CORPORATION, et al.,                     2:25-cv-02288 WBS

14              Appellants,

15         v.                             MEMORANDUM AND ORDER RE:
                                          APPELLEE'S MOTION TO DISMISS
16    THE ROMAN CATHOLIC BISHOP OF        APPEAL
      SACRAMENTO,
17
                Appellee.
18

19                                 ----oo0oo----

20              Interstate Fire & Casualty Company and National Surety

21    Corporation and Certain Underwriters at Lloyd's, London and

22    Certain London Market Insurance Companies (collectively,

23    "appellants") have separately appealed the Bankruptcy Court's

24    order granting relief from an automatic stay allowing several

25    state court actions to proceed against appellee Roman Catholic

26    Bishop of Sacramento.  (Docket No. 1.)  Appellee brought motions

27    to dismiss both appeals (Docket No. 26), which appellants opposed

28
                                        1

1  (Docket No. 28; <u>Certain Underwriters at Lloyd's v. The Roman</u>

2  <u>Catholic Bishop of Sacramento</u>, No. 2:25-cv-02288 WBS, ECF No. 18

3  (E.D. Cal. Oct. 3, 2025).)   The cases were then consolidated

4  (Docket No. 31), and appellee filed its reply shortly after.

5  (Docket No. 34.)

6  I.   <u>Factual and Procedural Background</u>

7         In 2019, the California legislature enacted AB 218,

8  which, in part, revived previously time-barred claims involving

9  childhood sexual abuse.  (<u>See</u> Docket No. 28 at 5-6.)  More than

10  250 individuals thereafter filed such claims against appellee.

11  (<u>Id.</u>)  Appellee filed its bankruptcy petition on April 1, 2024,

12  and a committee of unsecured creditors (the "Committee") --

13  comprised of nine survivors of sexual abuse with claims against

14  appellee -- was appointed on April 12, 2024.  (Docket No. 26 at

15  5-6.)

16         The Bankruptcy Court held a "case conference for the

17  presentation of survivor impact statements" on March 31, 2025; no

18  insurer was permitted to attend.  (Docket No. 28 at 6-7.)  Faced

19  with a torrent of impending tort litigation, appellee then sought

20  to extend the bankruptcy's automatic stay, imposed by 11 U.S.C. §

21  362, to all pending abuse claims, including those brought against

22  its affiliates.  (<u>Id.</u>)  The Committee and other abuse survivors

23  objected, and an agreement was reached in the form of a

24  stipulation which enjoined "nearly all the State Court Actions

25  but modified the automatic stay such that up to six cases could

26  proceed to trial in state court."  (Docket No. 26 at 7.)

27  Appellee and the Committee ultimately agreed to grant four

28  actions relief from the stay (the "Released State Court

2

1    Actions"), and the Bankruptcy Court entered an Order approving

2    the stipulation on July 25, 2025.  (Id.)

3         This appeal stems from the Bankruptcy Court's Order

4    approving the stipulation.  (See Docket No. 1.)  Appellee argues

5    appellants are not "persons aggrieved" by the Order and therefore

6    lack standing.  (See Docket No. 26.)  The only issue before the

7    court on this appeal then is whether the appellants have standing

8    for bankruptcy appellate purposes to pursue this appeal.

9    II.  Legal Standard

10        "All circuits, including this one, limit standing to

11   appeal a bankruptcy court order to persons aggrieved by the

12   order."  Matter of Point Center Financial, Inc., 890 F. 3d 1188,

13   1191 (9th Cir. 2018) (citation modified) (collecting cases).  A

14   "person aggrieved" is defined as "someone who is directly and

15   adversely affected pecuniarily by a bankruptcy court's order."

16   Id.  "An order that diminishes one's property, increases one's

17   burdens, or detrimentally affects one's rights has a direct and

18   adverse pecuniary effect for bankruptcy standing purposes."  Id.

19   (citing Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C.,

20   Inc.), 177 F. 3d 774, 777 (9th Cir. 1999).  The "persons

21   aggrieved" standard is prudential, and its chief purpose is

22   facilitating "efficient judicial administration."  Matter of

23   Fondiller, 707 F. 2d 441, 443 (9th Cir. 1983).[1]

24   _____

25        [1]    In its motions to dismiss, appellee states that it
     "takes no position on whether Appellants have Article III
26   standing to appeal."  (Docket No. 26 at 9 n.13; Certain
     Underwriters, No. 2:25-cv-02288 WBS, ECF No. 18 at 9-10 n.12.)
27   Appellants discuss Article III in passing, but their primary
     arguments concern the "persons aggrieved" standard.  (See Docket
28   No. 28; Certain Underwriters at Lloyd's, No. 2:25-cv-02288 WBS,

1    Appellants argue the "persons aggrieved" standard is

2  inapplicable, citing <u>Lexmark Int., Inc. v. Static Control</u>

3  <u>Components, Inc.</u>, 572 U.S. 118 (2014), for the proposition that

4  prudential standing has been abrogated entirely, and <u>Truck Ins.</u>

5  <u>Exch. v. Kaiser Gypsum Co., Inc.</u> 602 U.S. 268 (2024) for the

6  proposition that one need only be a "party in interest" to have

7  bankruptcy appellate standing.

8    Appellants' reading of <u>Lexmark</u> is overbroad.  The

9  Supreme Court's analysis of prudential standing in <u>Lexmark</u>

10  distinguished conventionally recognized limits of prudential

11  standing from the statutorily based "zone of interests" test, the

12  latter of which concerns whether a party "has a cause of action

13  under a statute, applying traditional principles of statutory

14  interpretation."  <u>Lexmark</u>, 572 U.S. at 1381 (citation modified).

15  At no point in <u>Lexmark</u> did the Court suggest prudential standing

16  was irrelevant generally.  <u>Id.</u> at 1381-82 ("It is misleading to

17  label <u>this</u> a 'prudential standing' question." (emphasis added)).

18    Neither is <u>Kaiser Gypsum</u> helpful to appellants.  (<u>See</u>

19  Docket No. 28 at 12.)  The discussion of "parties in interest" in

20  that case concerned another statute -- 11 U.S.C. § 1109(b) --

21  regarding participation in Chapter 11 bankruptcy proceedings.

22  <u>Kaiser Gypsum</u> accordingly does not speak to the "persons

23  aggrieved" standard at issue here.  602 U.S. at 271.

24    The "persons aggrieved" standard governing bankruptcy

25

26  ECF No. 18 (E.D. Cal. Oct. 3, 2025).)

    The propriety of applying "persons aggrieved" rather
27  than Article III in a bankruptcy appeal presents an interesting
    question, but it need not be decided here, because analysis under
28  the former resolves the issue of the latter.

appellate standing therefore applies, so it must be determined

whether appellants are "aggrieved" by the Bankruptcy Court's

Order.

III. <u>Discussion</u>

      A.   "<u>Persons Aggrieved" Standing</u>

      Appellee argues that appellants are not aggrieved by

the Order because (1) "Appellants assert they have no present

obligation to defend or indemnify [appellee]," and (2) "the

automatic stay is not designed to protect the financial interests

of insurance companies" and thus lifting the stay does not affect

appellants' rights or make them financially worse off than they

were before.  (Docket No. 26 at 12.)

      Appellants respond that the Order "permits (and

arguably encourages) the attachment and enforcement of liens" on

their policies, that it "damages [appellants'] rights" in that

restricting judgment liens to insurance proceeds eliminates

appellee's economic motivation to bring a vigorous defense, and

that by disallowing modification or vacatur, the Order "calls

into question [appellants'] ability to undertake certain actions

that they otherwise would," e.g., conduct investigations into

settlement demands, participate in the defense of a Released

State Court Action, or contest a lien.  (Docket No. 28 at 17-19.)

      The court finds that appellants are sufficiently

aggrieved by the Bankruptcy Court's Order to establish appellate

standing.  The decision of the Bankruptcy Judge to approve the

stipulation exposes appellants to increased liability by its very

nature, because it creates a new set of risks -- and thereby

pecuniary effects -- stemming from impending litigation.

1    Moreover, the language of the Order is far from "insurance

2    neutral"; it guarantees that should judgment liens result from

3    the Released State Court Actions, those liens can only be

4    executed against appellants.  (Docket No. 1 at 15-16); see In re

5    Thorpe Insulation Co., 677 F. 3d 869, 885 (9th Cir. 2012) ("A

6    plan is not insurance neutral when it may have a substantial

7    economic impact on insurers.").  It is hard to imagine a more

8    evident or direct diminution of property than a stipulation

9    providing that one's assets are the sole recourse for judgment

10   enforcement.

11        Appellee's argument that the stay is not "designed to

12   protect" the financial rights of insurers is unavailing.  Its

13   cited authority does support the notion that automatic stays are

14   "intended solely to benefit the debtor estate," but that

15   characterization applies where "the trustee does not seek to

16   enforce the protections of the automatic stay," and a creditor

17   instead attempts to enforce the stay in the debtor's place.  In

18   re Pecan Groves of Arizona, 951 F. 2d 242, 245 (9th Cir. 1991).

19        That is not the case here.  Appellants are not

20   creditors seeking to stand in the shoes of a debtor to challenge

21   a stay violation; they are, rather, asserting independent

22   financial rights expressly contemplated in the Bankruptcy Court's

23   Order.  Cf. id. at 245 (noting the relevant question was "whether

24   a creditor can attack violations of the automatic stay" (emphasis

25   added)); Matter of Petrone, 754 Fed. App'x 590, 591 (9th Cir.

26   2019) (confirming that defining a stay as "intended to protect

27   solely the interests of debtors and their estates" is relevant

28   when creditors seek to enforce violations of the stay).

1    Appellee's argument that "Appellants believe they have
2    no immediate obligations in connection with the underlying
3    claims" is also fruitless.  (Docket No. 26 at 13.)  Appellee
4    provides no authority stating that a party's purported subjective
5    understanding of their obligations is determinative of whether
6    they do, in fact, have obligations affected by a Bankruptcy
7    Court's order.  The Order in this case has an objective impact on
8    appellants regardless of what they may have at one time
9    acknowledged.  See In re Thorpe Insulation Co., 677 F. 3d at 887
10   (harm to appellants found because "the plan affects Appellants'
11   contractual rights, affects their financial interests, and has
12   the possibility of affecting their litigation rights in court");
13   cf. California Dep't of Toxic Substances Control v. Jim Dobbas,
14   Inc., 54 F. 4th 1078, 1091-92 (9th Cir. 2022) (holding that an
15   insurer seeking to defend an insured who will not or cannot
16   defend itself "has a protectable interest for purposes of Rule
17   24(a)(2), no matter what position, if any, the insurer has taken
18   as to coverage").

19   The Bankruptcy Court's Order thus impacts appellants
20   because it imminently and detrimentally affects both their
21   litigation rights and their financial interests.  The pecuniary
22   effect of the Order -- the exposure to liability it creates -- is
23   neither speculative nor anticipatory.  Cf. In re Thorpe
24   Insulation, 677 F. 3d at 887 (finding sufficient injury in fact
25   in the Chapter 11 context because the potential liabilities of
26   insurance companies were increased).

27   Because the Bankruptcy Court's Order diminishes
28   appellants property and detrimentally affects their rights,

1  appellants are "persons aggrieved" for purposes of bankruptcy
2  appellate standing.

3      B.  Equitable Considerations

4          In light of equitable issues raised during oral
5  argument, the court makes two further observations which counsel
6  in favor of finding standing.

7          First, under conventional principles of appellate
8  procedure, it is "well settled" that "only parties to a lawsuit,
9  or those that properly become parties, may appeal an adverse
10 judgment." Marino v. Ortiz, 484 U.S. 301, 304 (1988) (citing
11 U.S. ex rel. State of Louisiana v. Boarman, 244 U.S. 397, 402
12 (1917)); see also Washoe Tribe of Nevada & California v.
13 Greenley, 674 F. 2d 816, 818 (9th Cir. 1982) ("The general rule
14 is that one who was not a party of record before the trial court
15 may not appeal that court's judgment."). However, appellants
16 were participants in the decision now on appeal: they timely
17 filed objections to the stipulation, which the Bankruptcy Judge
18 approved after a hearing during which appellants' arguments were
19 rejected. (See Docket No. 28, at 10-11.)  They were thus parties
20 to the proceeding below, and their extensive participation
21 supports their entitlement to be heard in an appeal on its
22 outcome.  See In re Commercial Western Finance Corp., 761 F. 2d
23 1329, 1335 (9th Cir. 1985) ("[A]ttendance and objection should
24 usually be prerequisites to fulfilling the 'person aggrieved'
25 standard.") (collecting cases).

26         Second, appellee has not demonstrated -- either in its
27 briefing or at oral argument -- that finding standing for
28 appellants would unduly delay or prejudice its case.  Courts have

1   long treated delay and prejudice as equitable considerations in

2   determining whether to allow access to appellate review in varied

3   procedural settings.  Cf. Curtiss-Wright Corp. v. General

4   Electric Co., 446 U.S. 1, 8 (1980) (finding fitness for appeal

5   under "no just reason for delay" standard requires balancing

6   judicial economy and equities); Wood v. GCC Bend, LLC, 422 F. 3d

7   873, 878 (9th Cir. 2005) ("It is left to the sound judicial

8   discretion of the district court to determine the appropriate

9   time when each final decision . . . is ready for appeal. This

10  discretion is to be exercised in the interest of sound judicial

11  administration." (internal citations and quotation marks

12  omitted)).

13         Though the circumstances of this appeal are somewhat

14  atypical, general principles of equity and economy do not weigh

15  heavily against a finding of standing.  Cf. In re Crystal

16  Properties, Ltd., L.P., 268 F. 3d 743, 755-56 (9th Cir. 2001)

17  ("When reviewing a bankruptcy court's decision . . . a district

18  court functions as [an] appellate court and applies the standard

19  of review generally applied in federal court appeals." (internal

20  citations and quotation marks omitted)) (collecting cases).

21  Under the schedule to be set by this court it is not anticipated

22  that the appeal will delay the bankruptcy proceedings in any

23  significant way, and considerations of fairness dictate that

24  appellants be afforded an opportunity to be heard.

25         IT IS THEREFORE ORDERED that appellee's motion to

26  dismiss (Docket No. 26) be, and the same hereby is, DENIED.

27  Pursuant to the discussion at the hearing on this motion, the

28  briefing schedules for this appeal (Docket Nos. 32-33) will be

9

1  continued, and within seven (7) days of this Order the parties

2  shall submit a stipulation setting forth the new agreed-upon

3  briefing schedule.  If the parties do not propose a stipulation

4  by that date, the court will issue a briefing schedule.

5  Dated:  October 29, 2025

6  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28