1   PARKER, HUDSON, RAINER & DOBBS LLP        NICOLAIDES FINK THORPE
    Harris B. Winsberg (admitted *pro hac vice*)        MICHAELIDES SULLIVAN LLP
2   Matthew M. Weiss (admitted *pro hac vice*)        Matthew C. Lovell (SBN 189728)
    Matthew G. Roberts (admitted *pro hac vice*)        Laura H. Smith (SBN 136117)
3   Brian C. Aton (SBN 339266)        101 Montgomery Street, Suite 2300
    303 Peachtree St NE, Suite 3600        San Francisco, CA 94101
4   Atlanta, Georgia 30308        Telephone:     (415) 745-3779
    Telephone:     (404) 523-5300        Facsimile:     (415) 745-3771
5   Facsimile:     (404) 522-8409        Email: mlovell@nicolaidesllp.com
    Email:     hwinsberg@phrd.com                    lsmith@nicolaidesllp.com
6             mweiss@phrd.com
              mroberts@phrd.com
7             baton@phrd.com

8   Todd C. Jacobs (admitted *pro hac vice*)
    John E. Bucheit (admitted *pro hac vice*)
9   PARKER, HUDSON, RAINER & DOBBS LLP
    Two N. Riverside Plaza, Suite 1850
10  Chicago, Illinois 60606
    Telephone:     (312) 477-3305
11  Email:     tjacobs@phrd.com
              jbucheit@phrd.com
12
    *Attorneys for Interstate Fire & Casualty Company and National Surety Corporation*
13

14

15                          **UNITED STATES DISTRICT COURT**

16                          **EASTERN DISTRICT OF CALIFORNIA**

17

18  INTERSTATE FIRE & CASUALTY          | Civil Case Nos.
    COMPANY AND NATIONAL SURETY
19  CORPORATION, et al.,                | 2:25-cv-02262 WBS (lead case)

20          Appellants,                 | 2:25-cv-02288 WBS

21                                      | **INTERSTATE INSURERS' REPLY
    v.                                  | BRIEF**
22
    THE ROMAN CATHOLIC BISHOP OF
23  SACRAMENTO,

24          Appellee.

25

26

27

28

REPLY ..........................................................................................................1

I.  THE APPELLEES' DEFENSE OF THE ORDER BELOW
    FAILS ....................................................................................................1

    A.    TAKING EVIDENCE AND MAKING FINDINGS WAS
          NOT OPTIONAL ...........................................................................1

          1.    The Committee Misstates the Law .................................2

          2.    The "Findings" in the Order Are Insufficient.................6

    B.    THE BANKRUPTCY COURT DID NOT EVALUATE
          THE STIPULATION PROPERLY .....................................................8

          1.    The Stipulation Is a "Compromise" and Should Have
                Been Evaluated as Such................................................11

          2.    There Was No "Cause" for Stay Relief .........................15

    C.    THE BANKRUPTCY COURT WAS REQUIRED TO
          CONSIDER    THE    INTERSTATE    INSURERS'
          INTERESTS..................................................................................17

          1.    The Order Modifies the Policies....................................18

          2.    The Released State Court Actions Are Not
                Representative...............................................................19

          3.    The Appellees' Stay Relief Argument Misses the Point
                ......................................................................................21

    D.    "RIGHT FOR ANY REASON" DOES NOT SAVE THE
          ORDER ......................................................................................22

II. THE APPELLEES DID NOT MEANINGFULLY RESPOND
    TO THE PROPOSED INSTRUCTIONS ....................................................25

CONCLUSION ...............................................................................................26

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*In re 1438 Meridian Place, N. W., Inc.,*
    15 B.R. 89 (Bankr. D.D.C. 1981) ........................................................... 3

6

*1-800-411-Pain Referral Serv., LLC v. Otto,*
    744 F.3d 1045 (8th Cir. 2014) ............................................................... 9

7

8

*In re A & C Props.,*
    784 F.2d 1377 (9th Cir. 1986) ............................................................. 14

9

10

*In re Apple Inc. Device Performance Litig.,*
    50 F.4th 769 (9th Cir. 2022) ................................................................ 24

11

12

*Associated Elec. Coop., Inc. v. Mid-America Transp. Co.,*
    931 F.2d 1266 (8th Cir. 1991) ............................................................. 24

13

14

*Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.,*
    289 F.3d 589 (9th Cir. 2002) ........................................................ 10, 11

15

16

*In re: BGM Pasadena, LLC,*
    2016 WL 1738109 (Bankr. C.D. Cal. Apr. 27, 2016) ......................... 15

17

18

*In re Blumer,*
    95 B.R. 143 (B.A.P. 9th Cir. 1988) ....................................................... 9

19

20

*In re Bodeau,*
    2017 Bankr. LEXIS 2336 (Bankr. C.D. Cal. Aug. 18, 2017) .............. 7

21

22

*In re BSA,*
    137 F.4th 126 (3d Cir. 2025) ............................................................... 25

23

24

*In re Budd,*
    2011 WL 4485190 (B.A.P. 9th Cir. July 12, 2011) ............................. 2

25

26

*In re Cain,*
    2018 WL 3954185 (Bankr. M.D. Ala. Aug. 13, 2018) ........................ 3

27

*Carrillo-Gonzalez v. INS,*
    353 F.3d 1077 (9th Cir. 2003) ............................................................ 10

28

*Clapper v. Clark Dev., Inc.*,
  2014 WL 2155074 (N.D. Ohio May 22, 2014) ....................................................5

*Corder v. Gates*,
  947 F.2d 374 (9th Cir. 1991) ........................................................................23

*In re Daewoo Motor Am., Inc.*,
  488 B.R. 418 (C.D. Cal. 2011) ................................................................10, 11

*Delgado, et al. v. ILWU-PMA WELFARE PLAN*,
  2026 WL 161403 (9th Cir. Jan. 21, 2026) .......................................................23

*DNA Genotek Inc. v. Spectrum Sols. L.L.C.*,
  671 F. Supp. 3d 1105 (S.D. Cal. 2023), *aff'd sub nom. DNA
  Genotek Inc. v. Spectrum Sols. LLC*, 2025 WL 502040 (Fed. Cir.
  Feb. 14, 2025) ..............................................................................................10

*In re Dolch*,
  2008 WL 8448330 (B.A.P. 9th Cir. Apr. 17, 2008) ..................................3, 4, 7

*Duncan v. Walker*,
  533 U.S. 167 (2001) ......................................................................................13

*FTC v. Burke*,
  617 F. App'x 667 (9th Cir. 2015) ...................................................................24

*FTC v. Enforma Nat. Prods., Inc.*,
  362 F.3d 1204 (9th Cir. 2004) .........................................................................7

*Golden Nugget, Inc. v. Am. Stock Exch., Inc.*,
  828 F.2d 586 (9th Cir. 1987) ........................................................................23

*Graves v. Myrvang (In re Myrvang)*,
  232 F.3d 1116 (9th Cir. 2000) ......................................................................24

*In re Hall, Bayoutree Assocs., Ltd.*,
  939 F.2d 802 (9th Cir. 1991) ...........................................................................6

*In re Hamilton*,
  361 B.R. 532 (Bankr. D. Mont. 2007) ............................................................10

*In re Howell*,
  731 F.2d 624 (9th Cir. 1984) ........................................................................23

*Huard-Steinheiser, Inc. v. Henry*,
   280 F.2d 79 (6th Cir. 1960) ........................................................................... 24

*Hypoint Tech., Inc. v. Hewlett-Packard Co.*,
   869 F.2d 1491 (6th Cir. Feb. 21, 1989) ........................................................ 24

*In re Irish Bank Resol. Corp. Ltd.*,
   2019 WL 4740249 (D. Del. Sept. 27, 2019) ..................................................... 4

*In re Johnson*,
   756 F.2d 738 (9th Cir. 1985) ......................................................................... 2

*In re Juarbe*,
   2013 WL 5230267 (Bankr. N.D. Ind. Apr. 29, 2013) ......................................... 6

*Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa)*,
   674 F.3d 1083 (9th Cir. 2012) ................................................................ 24, 25

*Lumbermen's Underwriting All. v. Can-Car, Inc.*,
   645 F.2d 17 (9th Cir. 1980) ........................................................................ 6, 7

*MacIntyre v. Carroll Coll.*,
   48 F.4th 950 (9th Cir. 2022) ........................................................................ 23

*In re Marples*,
   266 B.R. 202 (Bankr. D. Idaho 2001) ............................................................ 13

*Marshall v. Commissioner*,
   456 F.2d 1189 (2d Cir. 1972) ....................................................................... 24

*Mattel Inc. v. Walking Mt. Prods.*,
   353 F.3d 792 (9th Cir. 2003) ...................................................................... 6, 7

*McClure v. Life Ins. Co. of N. Am.*,
   84 F.3d 1129 (9th Cir. 1996) ....................................................................... 22

*In re Miami Metals I, Inc.*,
   603 B.R. 531 (Bankr. S.D.N.Y. 2019) ............................................................ 14

*Mission Prod. Holdings v. Schleicher & Stebbins Hotels, L.L.C. (In re
   Old Cold, LLC)*,
   602 B.R. 798 (B.A.P. 1st Cir. 2019) ............................................................... 2

*Morgan v. Baker Hughes Inc.*,
   728 F. App'x 850 (10th Cir. 2018) .................................................................. 9

*NLRB v. Pac. Sw. Airlines*,
   550 F.2d 1148 (9th Cir. 1977)........................................................................ 7

*Official Joint Comm. of Unsecured Creditors v. Bashas', Inc. (In re Bashas', Inc.)*,
   2010 WL 6466571 (B.A.P. 9th Cir. Jan. 14, 2010)..................................... 10, 11

*In re Osborne*,
   257 B.R. 14 (Bankr. C.D. Cal. 2000) ............................................................ 9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
   390 U.S. 414 (1968) .................................................................................... 14

*In re Salutaris Dialysis & Nephrology Ctr.*,
   2012 WL 5457208 (Bankr. D.P.R. Oct. 17, 2012)........................................ 6

*Schieffler v. Rickman (In re Honeycutt)*,
   198 B.R. 314 (Bankr. E.D. Ark. 1996)....................................................... 10, 11

*Smith v. Mack Trucks, Inc.*,
   505 F.2d 1248 (9th Cir. 1974).................................................................... 10, 11

*Spokane Ry. Credit Union v. Gonzales (In re Gonzales)*,
   172 B.R. 320 (E.D. Wash. 1994).................................................................. 16

*Steinle v. Warren*,
   765 F.2d 95 (7th Cir. 1985) .......................................................................... 8

*Swanson v. Levy*,
   509 F.2d 859 (9th Cir. 1975)........................................................................ 24

*Takara v. Ass'n of Apartment Owners of Harbor Pointe*,
   2014 WL 2761214 (Bankr. D. Haw. June 17, 2014) ...................................... 15

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*,
   311 B.R. 551 (Bankr. C.D. Cal. 2004) ............................................................ 4

*In re Tucker*,
   989 F.2d 328 (9th Cir. 1993) ......................................................................... 6

*U.S. v. Hinkson*,
   585 F.3d 1247 (9th Cir. 2009)................................................................... 17, 22

*United States v. Brown*,
   333 U.S. 18 (1948) ........................................................................... 5

*United States v. Lewis*,
   833 F.2d 1380 (9th Cir. 1987) ........................................................ 9

*In re Villalobos*,
   2011 WL 4485793 (B.A.P. 9th Cir. Aug. 19, 2011) ......................... 7

*W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs., Inc.*,
   745 F.2d 1463 (Fed. Cir. 1984) ....................................................... 5

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ....................................................... 23

*In re Wilshire Courtyard*,
   729 F.3d 1279 (9th Cir. 2013) ................................................. 13, 14

*Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*,
   480 F. App'x 327 (5th Cir. 2012) .................................................... 8

*Zer-Ilan v. Frankford (In re CPDC, Inc.)*,
   337 F.3d 436 (5th Cir. 2003) ....................................................... 8, 9

**Other Authorities**

*Compromise*, Merriam-Webster, https://www.merriam-
   webster.com/dictionary/compromise (last visited Jan. 26, 2026) ...................... 13

FED. R. BANKR. P. 4001 ...................................................... 2, 3, 12

FED. R. BANKR. P. 7052 ............................................................. 3

FED. R. BANKR. P. 9014 ...................................................... 3, 4, 5

FED. R. BANKR. P. 9019 ........................................................... 13

FED. R. CIV. P. 52 .......................................................... *passim*

LBR 9014-1(d)(3)(D) ............................................................... 4

MODEL RULES OF PRO. CONDUCT R. 3.3(a)(1) (A.B.A. 1983) ................................ 11

William E. Wegner, *et al.*, Rutter Group Practice Guide: Federal Civil
   Trials & Evidence § 8:10 (June 2025) ................................................ 9

1    Appellants Interstate Fire & Casualty Company and National Surety

2 Corporation (together, the "Interstate Insurers"), by and through undersigned

3 counsel, hereby file this "Reply" (a) to the *Response Brief of Appellee The Roman*

4 *Catholic Bishop of Sacramento* [Dkt. 64] ("Debtor Brief") and the *Response Brief*

5 *of the Official Committee of Unsecured Creditors* [Dkt. 67] ("Committee Brief";

6 collectively, the "Response Briefs"); and (b) in further support of the *Interstate*

7 *Insurers' Opening Brief* [Dkt. 60] ("Opening Brief"),[1] respectfully stating as

8 follows:

9                                    **REPLY**

10 **I.    THE APPELLEES' DEFENSE OF THE ORDER BELOW FAILS**

11    The Appellees attempt to justify the Order with a flurry of arguments that

12 condense down into the following: (a) Civil Rule 52 and related concepts (*e.g.*, the

13 obligation to take evidence) did not apply to the Motion (Committee Br., §§ V.B.i,

14 V.A.i; Debtor Br. at 22:16-22); (b) the Bankruptcy Court properly granted the

15 Motion and approved the Stipulation under applicable law (Committee Br., §§

16 V.A.ii., V.B.iv., VI.; Debtor Br., §§ VI.B.-C., VI.F.); (c) the Interstate Insurers are

17 not harmed by the Order (Committee Br., §§ V.B.ii.-iii.; Debtor Br., §§ VI.A., VI.D.-

18 E, VI.G.); and (d) even if the Order is error, it should be affirmed under the

19 doctrine(s) of "right for any reason" and/or harmless error.  (*E.g.*, Committee Br. at

20 21 n.24, 22 n.25, 43; Debtor Br. at 23:4-23, 34:10-27.)  None are persuasive.

21    **A.    Taking Evidence and Making Findings Was Not Optional**

22    Both Appellees go to great lengths to rationalize the lack of legitimate findings

23 in the Order.  The Committee, for example, contends that findings of fact derived

24 from evidence were not compulsory. (Committee Br., §§ V.A.i., V.B.i.)[2]  Such

25

26 _____

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Opening Brief.

27
[2] Both Appellees, with varying degrees of detail, also claim that the Interstate Insurers in their Objection "did not
28 raise any factual disputes" but rather "disputed the application of Section 362 and Bankruptcy Rule 9019 to the facts
provided in the Stay Motion."  (Committee Br. at 33-34 n.45; *see also* Debtor Br. at 22:22 ("[T]here were no disputed
material facts.").)  This is sophistry.  For one, the Interstate Insurers objected to the *lack* of facts in the Motion – not

formalities, the Committee claims, are incompatible with the "speedy and necessarily cursory determination" afforded to "summary proceeding[s]" (like the Motion) in bankruptcy court – particularly since "the only Bankruptcy Rule specifically applicable to lift-stay motions," Bankruptcy Rule 4001, "does not require affirmative evidence by the movant" (Committee Br. at 21:7-22:1) and Civil Rule 52 states that "'findings or conclusions'" are "'not required'" whenever the court "'*rul[es] on a motion*'" (Committee Br. at 34:8-11 (emphasis in original)).

The Debtor largely adopts this position but goes a step further, insisting that the Bankruptcy Court did in fact make all requisite findings because the prefatory paragraph of the Order, *e.g.*: "states that the legal and factual bases set forth in the Motion … established 'just cause' …" and "further finds as cause that modifying the Automatic Stay is in the best interests of the Debtor … and all parties and [*sic*] interest" (Debtor Br. at 21:18-26).  These arguments are incorrect.

### 1.  The Committee Misstates the Law

As a threshold matter, the Committee misrepresents the law on this issue.  A fair reading of the Committee Brief gives the distinct impression that a motion for stay relief is *sui generis* – a "summary proceeding" where evidence is optional, findings are discretionary, and Bankruptcy Rule 4001 is the sole authority.  None of this is true.[3]

---

only from an evidentiary standpoint, but also as a substantive matter (*i.e.*, because the Motion did not even allege sufficient facts).  *See, e.g.*, [A.94, at 4:14-17]; *see generally* [*id*., § I.A.]  For another, the Objection contains a lengthy discussion **specifically disputing** the (two) unsupported factual allegations set forth in the Motion.  *E.g.*, [A.99, at 9:5-12 ("[T]he suggestion that 'demand letters' … will 'assist in facilitating the mediation process' is without merit.  […] Authorizing delivery of … 'demand letters' … 'facilitat[es]' [a global mediation] not a whit.  For that matter, permitting such a letter-writing campaign may (and likely will) ***undermine*** mediation by entrenching unreasonable expectations …" (emphasis in original) (quoting Motion at 6:20-21))]; *see generally id.*, §I.B.

[3] Even the "summary proceeding" quotation is taken out of context.  As the quoted case – and all accompanying citations – make clear, a stay relief hearing is not "summary" because the court has discretion to dispense with the taking of evidence on disputed material facts (as the Committee insinuates); the hearing is "summary" because the court determines only whether the movant "has presented a colorable claim."  *In re Budd*, 2011 WL 4485190, at *3 (B.A.P. 9th Cir. July 12, 2011) (quoted, selectively, in Committee Br. at 21:14-22:1 n.25); *see also In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985) ("The validity of the claim … is not litigated during the [stay relief] hearing." (internal citation omitted) (cited in Committee Br. at 22 n.25)); *Mission Prod. Holdings v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)*, 602 B.R. 798, 825 (B.A.P. 1st Cir. 2019) ("[A] hearing on a motion for relief from stay is merely a summary proceeding of limited effect, … determin[ing only] whether the [movant] has a colorable claim to

-2-

1    On the most basic level, all bankruptcy litigation falls into one of two
2    categories: a contested matter or an adversary proceeding.  An adversary proceeding
3    is in essence a normal civil suit – it is commenced by complaint and results in a
4    verdict or judgment – that is connected to, but separate from, the underlying
5    bankruptcy case.  *See, e.g.*, *In re Cain*, 2018 WL 3954185, at *2 (Bankr. M.D. Ala.
6    Aug. 13, 2018).  Contested matters, by contrast, are in general terms disputed
7    requests for relief that occur within the bankruptcy case proper and (with certain
8    exceptions not relevant here) are commenced by motion.  *E.g.*, *In re 1438 Meridian
9    Place, N. W., Inc.*, 15 B.R. 89, 95 (Bankr. D.D.C. 1981).  An opposed motion for
10   relief from the stay, like the Motion below, is a contested matter.

11       The form and manner of contested matter litigation – including stay relief
12   litigation – is governed by Bankruptcy Rule 9014.  FED. R. BANKR. P. 4001(a)(1)
13   ("A motion … for relief from the automatic stay … must comply with [Bankruptcy]
14   Rule 9014"); *see generally* FED. R. BANKR. P. 9014.  Relevant here, Bankruptcy Rule
15   9014 makes clear that litigation in a contested matter generally follows form to
16   ordinary civil litigation (*i.e.*, the parties can take discovery and may move for
17   summary judgment),[4] *see generally* FED. R. BANKR. P. 9014(c), including with
18   respect to the following: (a) Civil Rule 52 applies, FED. R. BANKR. P. 9014(c)(1)
19   (Bankruptcy Rule 7052 (incorporating Civil Rule 52) "appl[ies] in a contested
20   matter"); and (b) evidentiary hearings in litigated contested matters are required
21   under certain circumstances.  *See In re Dolch*, 2008 WL 8448330, at *3-4 (B.A.P.
22   9th Cir. Apr. 17, 2008).  Not mentioned in Bankruptcy Rule 9014 (or Bankruptcy
23   Rule 4001), however, are evidentiary burdens, which for lift-stay motions are
24   dictated by the Bankruptcy Code and applicable law.  This background thus
25   underscores three, critical flaws in the Committee's analysis.

26

27   property of the estate." (emphasis omitted) (cited in Committee Br. at 22 n.25)).

28   [4] For clarity, Bankruptcy Rule 9014 also modifies aspects of the typical framework to enhance expedition and flexibility.  Pretrial orders and certain pretrial disclosures under Civil Rules 16 and 26, for example, are not required.  *See generally* FED. R. BANKR. P. 9014(c).

-3-

1    ***First***, "affirmative evidence by the [Debtor]" (Committee Br. at 21:9)

2    indisputably was a predicate for approval of the Stipulation.  Under blackletter law,

3    motions for stay relief are subject to a shifting burden that places initial

4    responsibility on the movant.  *See generally Truebro, Inc. v. Plumberex Specialty*

5    *Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 557 (Bankr. C.D.

6    Cal. 2004).  A lift-stay movant therefore must establish – ***with evidence*** – "a prima

7    facie case" of "cause" before the court can grant relief.  *Id*.; *see id*. at 557 n.11; *see*

8    *also* LBR 9014-1(d)(3)(D).  *Accord In re Irish Bank Resol. Corp. Ltd.*, 2019 WL

9    4740249, at *6-7 (D. Del. Sept. 27, 2019).[5]  That did not happen here.  (Op. Br.,

10    §II.A.; *see infra* §I.B.)

11    ***Second***, the "decision to consider evidence in connection with a lift-stay

12    motion" is not "committed to the discretion of the bankruptcy court" (Committee

13    Br. at 22:1-4) and was not optional here.  Bankruptcy Rule 9014 is explicit on the

14    matter: "A witness's testimony on a disputed material factual issue must be taken in

15    the same manner as testimony in an adversary proceeding."  FED. R. BANKR. P.

16    9014(d).  This means "an evidentiary hearing" – "at which testimony of witnesses is

17    taken" – "***must be held***" if a contested matter "cannot be decided without resolving

18    a disputed material issue of fact."  *Dolch*, 2008 WL 8448330, at *2 (emphasis added)

19    (quoting FED. R. BANKR. P. 9014(d), 2002 Advisory Committee Note (internal

20    quotations omitted)).  Given the several "disputed material issue[s] of fact" here, *id*.;

21    *see* Op. Br. at 20, the evidentiary hearing requirement clearly attached (and just as

22    clearly was unsatisfied).

23    ***Finally***, neither the Committee's cited "caselaw interpreting [Civil] Rule

24    52(a)" nor the "advisory committee notes" on the rule "confirm[]" that "factual

---

[5] If the movant makes out his *prima facie* case, then the burden of going forward and of ultimate persuasion shifts to the party opposing relief; if the movant fails to carry his *prima facie* burden, the inquiry ends and the motion is denied. *See Plumberex*, 311 B.R. at 557.  Thus, the Committee has it exactly backwards: the Interstate Insurers never had (and therefore did not "fail[] to meet") any "burden to produce contrary evidence" (Committee Br. at 21:3-4) because the burden never shifted from the Debtor.

findings" below (Committee Br. at 34:11-35:2) were unnecessary.  Most obviously, the advisory committee notes (stating that "findings and conclusions are unnecessary upon decision of a motion") do not and cannot refer to decisions on contested matters, like the Motion, for the simple reason that contested matters do not exist in ordinary civil litigation.  Those notes and Civil Rule 52(a)(3) more generally, then, must by necessity exclude contested matters from their scope.

Basic logic also bears this out.  The word "motion" in Civil Rule 52(a)(3) suspends the Civil Rule 52(a) findings/conclusions requirement for motions **within** a particular civil suit – a case-terminating motion under Civil Rules 12 or 56, for instance, or a request for discrete relief (*e.g.*, a motion to show cause).  FED. R. CIV. P. 52(a)(3) (motions under Civil Rules 12 and 56); *Clapper v. Clark Dev., Inc.*, 2014 WL 2155074, at *2 (N.D. Ohio May 22, 2014) (motion to show cause); *W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Rsch. Assocs., Inc.*, 745 F.2d 1463, 1466 n.5 (Fed. Cir. 1984) (motion to disqualify).  But when a court enters judgment (following a bench trial) **on** a civil suit, thus disposing of the entire action, Civil Rule 52(a) unequivocally requires findings and conclusions.  FED. R. CIV. P. 52(a)(1).

Contested matters should (and do) adhere to the same scheme.  If in other words a bankruptcy court disposes of a contested matter by summary judgment (or, *e.g.*, grants a motion to compel discovery with respect to a contested matter), then Civil Rule 52(a)(3) suspends the findings/conclusions requirement.  But when a bankruptcy court (following a bench trial) enters judgment **on** a contested matter, the Civil Rule 52(a) findings/conclusions requirement attaches.  This gives Civil Rule 52 equal effect in both forms of litigation and notably avoids the absurd result where (according to the Committee, apparently) Bankruptcy Rule 9014 adopts a Civil Rule that rarely if ever would apply.  *Cf. United States v. Brown*, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates [the] acceptance of an interpretation resulting in patently absurd consequences.").

The Committee's citations do not compel, or for the most part even support,

1    a different conclusion.  With two exceptions – each, a decision of a bankruptcy court

2    outside the Ninth Circuit that conflicts with binding Ninth Circuit precedent[6] – every

3    decision cited by the Committee arose in the context of an **adversary proceeding**

4    motion.   This makes  good  sense.   Adversary  proceedings  are  the  bankruptcy

5    equivalent  of  a  normal  civil  suit  (*see supra*),  so  Civil  Rule  52(a)(3)  naturally

6    suspends the findings/conclusions requirement for decisions on motions filed within

7    those proceedings.  That is not at issue here.  *See supra*.

8            Put simply, the Committee is mistaken.  The Bankruptcy Court was obligated

9    to find facts and state legal conclusions, FED. R. CIV. P. 52(a), when ruling on the

10   Motion.   The  Bankruptcy  Court  also  was  obligated  to  take  (and  the  Debtor  to

11   provide) evidence.  Because the Bankruptcy Court did neither, it erred.

12                2.    The "Findings" in the Order Are Insufficient

13           Equally  meritless  is  the  Debtor's  claim  that  the  form  of  Order  contained

14   adequate findings.  As the Ninth Circuit has explained repeatedly, "compl[iance]

15   with [Civil] Rule 52(a)" demands "findings … explicit enough to give the appellate

16   court a clear understanding of the basis of the trial court's decision."  *Mattel Inc. v.*

17   *Walking  Mt.  Prods.*,  353  F.3d  792,  815  (9th  Cir.  2003)  (internal  citations  and

18   quotations omitted); *accord, e.g.*, *Lumbermen's Underwriting All. v. Can-Car, Inc.*,

19   645 F.2d 17, 18 (9th Cir. 1980) (citing cases).  This means "[s]tatements conclusory

20   in nature are to be eschewed in favor of statements of the preliminary and basic facts

21   on which the [trial] court relied.  **Otherwise, the**[] **findings are useless** for appellate

22   purposes."  *Mattel Inc.*, 353  F.3d at 815 (emphasis added) (internal citations and

23   quotations omitted).

24           To that end, the Ninth Circuit has consistently remanded when confronted

25

26   ───────────────────

27   [6] *See In re Juarbe*, 2013 WL 5230267, at *1 (Bankr. N.D. Ind. Apr. 29, 2013) (declining to make findings in a Chapter 13 contested matter); *In re Salutaris Dialysis & Nephrology Ctr.*, 2012 WL 5457208, at *4 (Bankr. D.P.R. Oct. 17, 2012) (suggesting that Civil Rule 52(a)(3) did not require findings but making them anyway).  *Contra, e.g.*, *In re Hall,*

28   *Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991); *In re Tucker*, 989 F.2d 328, 330 (9th Cir. 1993).  (*See generally* Op. Br., §I.B.)

1  with "conclusory," *id*., "perfunctory," or "boilerplate," *NLRB v. Pac. Sw. Airlines*,

2  550 F.2d 1148, 1152 (9th Cir. 1977) (internal quotations omitted), findings.

3  Examples include: an FTC enforcement action, where "[t]he only finding in the

4  district court's injunctive order" stated "[t]here is good cause to believe that

5  Defendants … violat[ed]" a prior consent order, *FTC v. Enforma Nat. Prods., Inc.*,

6  362 F.3d 1204, 1215 (9th Cir. 2004); a product liability case, where "the crucial

7  findings and conclusions consist[ed] solely of two brief statements" that the

8  "damage … was proximately caused as a result of the negligent design" of the

9  product and that the defendant "was negligent in not properly designing" the

10  product, *Lumbermen's Underwriting*, 645 F.2d at 18; and a Lanham Act dispute,

11  where the district court "failed to provide any reasoning for its conclusions" that

12  attorney fees were not warranted, *see Mattel Inc.*, 353 F.3d at 815.[7]

13      This Order is no different.   The only "findings" it contains are broad

14  statements – *e.g.*, "the Motion establish[es] just cause for the relief granted";[8] the

15  requested relief "is in the best interests of the Debtor" and other parties [A.189, at

16  2:12-15] – that lack even so much as a whiff of "the preliminary and basic facts on

17  which the [Bankruptcy Court] relied," *Mattel Inc.*, 353 F.3d at 815 (internal citations

18  and quotations omitted), when making them.   Such conclusory "findings" do not

19  provide an "understanding of the basis [for] the [Bankruptcy Court's] decision," do

20  not detail "any reasoning for [the Bankruptcy Court's] conclusions," *Mattel Inc.*, 353

21  F.3d at 815 (internal citations and quotations omitted), and therefore do not suffice.

22  *See generally id*.; *Lumbermen's Underwriting*, 645 F.2d at 18.   The Debtor's

23  contention to the contrary lacks any foundation in fact or law and should be rejected.

24

25  [7] For the avoidance of doubt, the BAP has also remanded many appeals for the same reason.  *See, e.g.*, *In re Villalobos*,
26  2011 WL 4485793, at *9 (B.A.P. 9th Cir. Aug. 19, 2011) ("[T]he bankruptcy court failed to provide sufficient findings
   ...  The [order] was granted 'for good cause' but did not articulate a legal standard or make factual findings."); *Dolch*,
   2008 WL 8448330, at *3 ("[T]here are no detailed findings of fact or conclusions of law.").

27  [8] As to the Debtor's assertion that the Bankruptcy Court "adopted the numerous reasons set forth in the … Motion as
28  findings" (Debtor Br. at 21:18-22), that, too, is wholly insufficient under Ninth Circuit law.  *See Mattel Inc.*, 353 F.3d
   at 815; *accord In re Bodeau*, 2017 Bankr. LEXIS 2336, at *4 (Bankr. C.D. Cal. Aug. 18, 2017) ("Boilerplate recitals
   in a form motion by movants are not sufficient to assist the court in meeting" its obligation to make factual findings).

**B.    The Bankruptcy Court Did Not Evaluate the Stipulation Properly**

Each of the Debtor and Committee asserts that the Bankruptcy Court properly found "cause" to grant the Motion under Section 362 and did not need to analyze the Stipulation as a Bankruptcy Rule 9019 "compromise or settlement."  And even if Bankruptcy Rule 9019 did apply, claim the Appellees, the record also supported that relief.  Key to both arguments is the following "evidence" on which the Bankruptcy Court purportedly relied: the Motion itself, including the arguments therein (*e.g.*, Committee Br. at 22:8-14); the Stipulation, which was "submitted as evidence" and contained "material facts … stipulated as true" (Debtor Br. at 24:11-12); the RJN and "notice of hearing," the latter of which "incorporated into the record … not just as judicial notice" various documents (*id*. at 28:9-20); and the "many benefits of the Stipulation [that] were presented [by counsel] to the Bankruptcy Court during a lengthy hearing" (*id*. at 25:16-17; *see also* Committee Br. at 23:19-24:14 (similar)). This recitation of alleged evidence demonstrates a profound, and ultimately fatal, misunderstanding of the record below.

As a gating issue, the record before a trial court is generally understood to consist only of evidence ***admitted*** by that court – not any and every document a litigant shoehorns into a "notice of hearing" or otherwise unilaterally "submit[s]" (Debtor Br. at 24:11-12; *id*. at 28:9-11).  *E.g.*, *Zer-Ilan v. Frankford (In re CPDC, Inc.)*, 337 F.3d 436, 443 (5th Cir. 2003) (concluding the "district court erred in allowing" supplementation of the appellate bankruptcy "record with documents and testimony that were not offered [to] and admitted" by the bankruptcy court); *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 480 F. App'x 327, 329 (5th Cir. 2012) (affirming order granting motion to strike "disputed [putative] evidence [that] was not admitted as evidence before the bankruptcy court …").  *Cf. Steinle v. Warren*, 765 F.2d 95, 100 (7th Cir. 1985) ("[M]erely forwarding a document to a judge's chambers is insufficient to make the document a part of the district court record …").  Indeed, "[it] is well settled that" documents "not admitted into

1    evidence" are not "evidence," *In re Osborne*, 257 B.R. 14, 19 (Bankr. C.D. Cal.

2    2000), and therefore are not part of the record. *E.g.*, *In re CPDC*, 337 F.3d at 443.

3    In that the Bankruptcy Court here did not grant the RJN or admit so much as a single

4    document (and indeed did not take evidence), it is necessarily true that none of the

5    documents referenced by the Appellees were "incorporated into the record" below

6    (Debtor Br. at 28:9-11).[9]  *See, e.g.*, *In re CPDC*, 337 F.3d at 443.

7           For that matter, little if any of the "evidence" identified by the Appellees is

8    actual, competent evidence that could have been admitted even if it had been offered

9    (which it was not) while the Bankruptcy Court held an evidentiary hearing (which it

10   did not).  *Cf.* William E. Wegner, *et al.*, Rutter Group Prac. Guide: Fed. Civ. Trials

11   & Ev. § 8:10 (June 2025) ("Evidence" is "witness testimony, documents … received

12   into the record as exhibits, any facts to which all parties have stipulated, and

13   judicially-noticed facts.").   Topping that list[10] are the "many benefits" of the

14   Stipulation "present[ed]" by counsel during the "lengthy hearing" (Debtor Br. at

15   25:16-17) and set forth in the Motion itself.  (*See* Committee Br. at 23:9-10 ("[T]he

16   [] Motion [was] explicitly considered in the [] Order").)

17          Under hornbook law, "arguments and statements of counsel" (written or oral)

18

19   [9] Even assuming (and the Interstate Insurers do not) that the Stipulation could be considered record evidence since
     the Bankruptcy Court approved it, the purportedly "material facts" it contains are irrelevant to the "cause" inquiry

20   and/or the "fair and equitable" standard. *See generally* [A.193-94 (describing general background facts, such as the
     petition date and the date the UST appointed the Committee)].  It therefore was not an adequate basis for granting the

21   Motion and is not sufficient for any similar purpose on appeal.

22   [10] In addition, the documents contained in the (never granted) RJN could not have been admitted (or judicially
     noticed) in full – irrespective of whether those documents were filed on the docket of the Bankruptcy Court. *In re*

23   *Blumer*, 95 B.R. 143, 146 (B.A.P. 9th Cir. 1988) ("That a fact sought to be noticed is found in a court's records is not
     talismanic; the fact still must be of the type described in Fed. R. Evid. 201.").  That is because a court cannot "take
     judicial notice of the truth" of filed documents and/or the facts contained within them, *id.*, but is instead limited to

24   judicially noticing that the documents were filed and/or statements (in the documents) were made.  *See Morgan v.*
     *Baker Hughes Inc.*, 728 F. App'x 850, 857 (10th Cir. 2018) (filed documents "may only be considered to show their

25   contents, not to prove the truth of the matters asserted therein." (internal citations and quotations omitted)); *see also*
     *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1063 n.13 (8th Cir. 2014).  Thus, even if the Bankruptcy

26   Court had granted the RJN (which it did not), the documents it attached would not have become part of the record;
     the Bankruptcy Court, at most, would have been able to judicially notice only those aspects of the documents (*e.g.*,

27   that they were filed or that they *contained* certain statements) permitted by FED. R. EVID. 201 and applicable law. *See*
     *Blumer*, 95 B.R. at 146.  Under Ninth Circuit law, moreover, an "[a]nnouncement on the record of the fact that a court
     is taking judicial notice" must be made.  *United States v. Lewis*, 833 F.2d 1380, 1385 (9th Cir. 1987).  That did not

28   occur here.  *See generally* [A.150-76 (Tr.)].

1    "are not evidence." *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589,

2    593 n.4 (9th Cir. 2002) (internal citations and quotations omitted); *see also Smith v.*

3    *Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("Legal memoranda and oral

4    argument, in the summary-judgment context, are not evidence …"). *Accord, e.g.*,

5    *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 671 F. Supp. 3d 1105, 1134 (S.D. Cal.

6    2023) ("Attorney argument is not evidence." (internal quotations and citations

7    omitted)), *aff'd sub nom. DNA Genotek Inc. v. Spectrum Sols. LLC*, 2025 WL 502040

8    (Fed. Cir. Feb. 14, 2025); *In re Hamilton*, 361 B.R. 532, 551 (Bankr. D. Mont. 2007);

9    *Carrillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003). As such, neither the

10   alleged "benefits of the Stipulation … presented [by counsel] to the Bankruptcy

11   Court during a lengthy hearing" (Debtor Br. at 25:16-17) nor the "bases set forth in

12   the Motion" (Committee Br. at 22:11 (internal quotations and alteration omitted))

13   were properly before the Bankruptcy Court and certainly were not record evidence

14   that could have been considered in granting relief. *See, e.g., Schieffler v. Rickman*

15   *(In re Honeycutt)*, 198 B.R. 314, 314 (Bankr. E.D. Ark. 1996) ("It is a basic tenet of

16   law that statements of counsel in briefs or during trial are not evidence.").

17       This is true notwithstanding the Debtor's contention, based entirely on two,

18   non-binding cases, that a court "in making its decision" may "rely … in part" on

19   "representations of counsel." (Debtor Br. at 25:18-26:11 (citing *Official Joint*

20   *Comm. of Unsecured Creditors v. Bashas', Inc. (In re Bashas', Inc.)*, 2010 WL

21   6466571, at *5 n.12 (B.A.P. 9th Cir. Jan. 14, 2010) and *In re Daewoo Motor Am.,*

22   *Inc.*, 488 B.R. 418, 429 (C.D. Cal. 2011)). As is plain from those decisions, the

23   "representation[]" in each case was a one-time factual statement describing that

24   attorney's (or his client's) intent with respect to the Chapter 11 plan that the attorney

25   (or his client) had filed or would file. *See Bashas', Inc.*, 2010 WL 6466571, at *5

26   ("At the hearing, the bankruptcy court asked [debtor's] counsel if [the debtor] would

27   present a full-payment plan, and counsel replied [yes]."); *Daewoo Motor Am.*, 488

28   B.R. at 429 ("[C]ounsel … who were the principal parties that negotiated the terms

1  of the plan, both stated that it was their intent to comply with" certain tax provisions).

2  And in fact, the attorney representation in the *Bashas'* case was **in response** to a

3  direct question from the court.  *See* 2010 WL 6466571, at *5.

4        Clearly a court should be able to "rely, in part" on the words an attorney

5  speaks in such a situation.  *See* MODEL RULES OF PRO. CONDUCT R. 3.3(a)(1) (A.B.A.

6  1983) ("A lawyer shall not knowingly … make a false statement of fact … to a

7  tribunal …").  But that is not the issue here.  The "representations of counsel" before

8  the Bankruptcy Court – *i.e.*, the "many benefits of the Stipulation [that] were

9  presented … during a lengthy hearing" (Debtor Br. at 25:16-17) – were arguments

10  in favor of the Motion, which the speaking lawyer(s) had filed or supported.  *See*

11  *generally* [A.150-76 (Tr.)].  That is not evidence, and the Bankruptcy Court was not

12  permitted to rely on it (partially or otherwise) when ruling on the Motion.  *See, e.g.*,

13  *Honeycutt*, 198 B.R. at 314.[11]

14                              *     *     *

15        In sum, the only "evidence" cited by the Appellees consists of (a) documents

16  that were not admitted and mostly were not competent in any event and (b) attorney

17  argument.  **None of that is evidence**.  For this reason alone, the Order below is error

18  (*see* Op. Br., §II.A.) and the Appellees' attempts to defend it on the merits

19  necessarily fail.

20        1.    The Stipulation Is a "Compromise" and Should Have Been

21              Evaluated as Such

22        The Appellees approach in the same fashion the Bankruptcy Court's failure

23  to analyze the Stipulation as a "settlement or compromise."  Both Appellees begin

24  by arguing that the Bankruptcy Court was not obligated to evaluate the Stipulation

25  under Bankruptcy Rule 9019 and related law for two reasons: (a) Bankruptcy Rule

26

27  _____

28  [11] To the extent *Bashas'* or *Daewoo* could be read to state otherwise, they are not binding on this Court and further
are in direct conflict with Ninth Circuit authority.  *See Barcamerica*, 289 F.3d at 593 n.4; *Mack Trucks*, 505 F.2d at
1249.

4001(d) "specifically contemplates … agreements related to relief from [the] automatic stay" and therefore controls over "the more general [Bankruptcy] Rule 9019" (Debtor Br. at 34:5-8; *see also* Committee Br. at 47 n.67 (similar)); and (b) Bankruptcy Rule 9019 "applies exclusively to the disposition of [litigation] claims that are either owned by or asserted against the estate" (Committee Br. at 48:11-15 (emphasis omitted)), whereas the Stipulation "does not purport to settle claims owned by or asserted against the [Debtor's] estate." (Committee Br. at 49:6-8; *see also* Debtor Br. at 33:23-25.)  From there, and in the alternative, the Appellees assert that the Order is appropriate because "the record of this Chapter 11 case independently demonstrates overwhelmingly that the Stipulation was fair, equitable, and in the best interests of the estate." (Debtor Br. at 34:23-25; *see also* Committee Br. at 51-53.)  The Appellees are wrong on all three fronts.

*First*, Bankruptcy Rule 4001(d) did not relieve the Bankruptcy Court of its responsibility to evaluate the Stipulation under Bankruptcy Rule 9019.  The former rule in pertinent part applies only to "an agreement to modify or terminate ***the stay provided for in §362***," FED. R. BANKR. P. 4001(d)(1)(A)(iii) (emphasis added), which is only ***one*** of the Stipulation's effects.  *See* [A.194, ¶¶2-3].  Put differently, the agreement in the Stipulation to modify the automatic stay (*i.e.*, "the stay provided for in §362," FED. R. BANKR. P. 4001(d)(1)(A)(iii)) as to the Debtor does not somehow supersede the rest of the Stipulation contemplating the issuance of an "injunction pursuant to 11 U.S.C. §105(a)" for the benefit of the Affiliates [A.194, ¶3] and/or the approval of the Committee's intervention motion in the Adversary Proceeding, *see* [*id*. at ¶2] – neither of which is "an agreement to modify or terminate the stay provided for in §362," FED. R. BANKR. P. 4001(d)(1)(A)(iii).  As a result, the Appellees' argument fails under the plain terms of Bankruptcy Rule 4001(d).

*Second*, Bankruptcy Rule 9019 (and related law) is nowhere near as narrow as the Appellees suggest.  For one, the relevant language of the rule itself is not qualified in any way.  It does not state that the "compromise or settlement" must

1   resolve or relate to a "cause[] of action that would normally be brought in the context

2   of litigation" (Committee Br. at 48:14-49:1) or that a "release[]," "claim waiver[],"

3   "transfer of property of the bankruptcy estate, or payment of money" (Debtor Br. at

4   33:24-25) must be involved.  It refers simply to "compromises or settlements."  FED.

5   R. BANKR. P. 9019.  Caselaw (including law within this circuit) also establishes that

6   Bankruptcy Rule 9019 applies to the settlement of contested matters – many of

7   which are not "causes of action that would normally be brought in the context of

8   litigation" (Committee Br. 48:14-49:1).  *See, e.g.*, *In re Marples*, 266 B.R. 202, 206

9   (Bankr. D. Idaho 2001) (rejecting proposed compromise of the trustee's objection to

10  the debtor's claimed exemption because the trustee "failed to establish that the

11  proposed compromise" satisfied the *A&C Props*. test).

12          Most fundamentally, the meaning of the word "compromise" is not limited to

13  the resolution of claims or the exchange of money or property: a "compromise" is

14  among other things, a "settlement of differences … by consent reached by mutual

15  concessions."      *Compromise*,    Merriam-Webster,    https://www.merriam-

16  webster.com/dictionary/compromise (last visited Jan. 26, 2026).  *Cf. Duncan v.

17  Walker*, 533 U.S. 167, 174 (2001) ("[E]very clause and word of a statute" should be

18  given effect (internal citations and quotations omitted)).  That is precisely what the

19  Stipulation purports to achieve.[12]  *See* [A.194, Recital ¶9 ("In order to resolve the

20  Injunction Motion and other pending issues … the Parties have reached a

21  compromise and resolution ***of their differences*** …" (emphasis added)].[13]

22

---

23  [12] Debtors in two other Californa diocesan bankruptcies, represented by the same firm engaged as Debtor's counsel
    here, moved under Bankruptcy Rule 9019 when seeking approval of similar stipulations.  *See In re The Roman

24  Catholic Archbishop of San Francisco*, Case No. 23-30564 (Bankr. N.D. Cal. Aug. 7, 2025), ECF 1285; *In re The
    Roman Catholic Bishop of Santa Rosa*, Case No. 23-10113 (Bankr. N.D. Cal. July 14, 2025), ECF 1363.

25  [13] The Committee endeavors to distance itself from the text of the Stipulation (which references the parties'
    "compromise") by alluding to the "substance over form" doctrine (Committee Br. at 50 n.73 (citing and quoting *In re*

26  *Wilshire Courtyard*, 729 F.3d 1279, 1286 (9th Cir. 2013)).  This is specious.  For one, the "substance," *id.*, of the
    Stipulation is a "compromise" under any reasonable interpretation of that word.  (*See supra*.)  For another, the

27  background of *Wilshire Courtyard* makes clear that the doctrine as quoted applies in the ***tax*** law context.  *See generally*
    729 F.3d at 1285-6.  Indeed, the quotation from *Wilshire Courtyard* is in fact a quotation from *Frank Lyon Co. v.

28  United States*, which "concern[ed] the federal income tax consequences" of a transaction, 435 U.S. 561, 572 (1978),
    and in that context stated: "[T]he Court has refused to permit the transfer of formal legal title to shift the incidence of

-13-

1  Bankruptcy Rule 9019 and related law therefore applied to the Stipulation and

2  should have been analyzed.  (*See* Op. Br., §I.A.)  The Bankruptcy Court's failure to

3  do so was error.

4      ***Finally***, the record below does not independently establish that the Stipulation

5  was "fair and equitable," *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986),

6  not least because there was no record (*see supra* §I.B.).[14]  But even aside from that

7  absence, at least two aspects of the proceeding below were fatally deficient.  Chief

8  among them, the Bankruptcy Court did not "consider[] the interests of … non-

9  settling parties" (here, the Interstate Insurers), *In re Miami Metals I, Inc.*, 603 B.R.

10  531, 535 (Bankr. S.D.N.Y. 2019), when approving the Stipulation.  (*See* Op. Br. at

11  23-24.)  Also lacking was any evidence – competent or otherwise – of many of the

12  factual details necessary to approve a settlement.  Even in the record as the Appellees

13  define it, there is no discussion of the Debtor's business judgment (*see* Op. Br. at 23

14  n.12; *id*. at 30); none of the specificity required to analyze and apply the "fair and

15  equitable" standard,[15] *see, e.g.*, [A.150-76 (Tr.)]; and conflicting perspectives on the

16  Stipulation's "consisten[cy] with" the Debtor's "goal of negotiating a plan of

---

taxation … In applying ***this*** doctrine of substance over form, the Court has looked to the objective economic realities of a transaction …"  *Id*. at 572-73 (emphasis added).  This is sensible.  A taxing authority should not be bound by the label a taxpayer affixes on a transaction.  But nothing in *Wilshire Courtyard* or *Frank Lyon* suggests that transacting ***parties*** should not themselves be bound to the label they choose.  To that end, the Committee through its attorneys signed the Stipulation which recites that it is "a compromise."  The Committee cannot now switch horses midstream.

[14] Separately, the doctrine permitting affirmance on any grounds supported by the record does not apply here.  *See infra* §I.D.

[15] The Supreme Court in discussing the "fair and equitable" standard wrote:

> [A] reviewing court [must] have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate … unsupported by evaluation of the facts or analysis of the law. Here there is no explanation of how the strengths and weaknesses of the debtor's causes of action were evaluated or upon what grounds it was concluded that [the] settlement … was "fair and equitable."  Although we are told that the alternative to settlement was "extensive litigation at heavy expense" and "unnecessary delay," there is no evidence that this conclusion was based upon an educated estimate of the complexity, expense, and likely duration of the litigation.  Litigation and delay are always the alternative to settlement …

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 434 (1968).

1 reorganization" (Debtor Br. at 37:16-18), *contra* [A.171, at 36:13-17 ("First of all, I

2 don't necessarily agree with the committee that releasing cases for trial is going to,

3 in and of itself, move the case quickly to settlement. … I just don't know.  It may,

4 but I don't agree that that's a driving force in this.") (Weinstein)].   Under these

5 circumstances, and particularly given the absence of a record, the Order cannot and

6 should not be affirmed on any alternate ground.

7 2.     There Was No "Cause" for Stay Relief

8 The Order fares no better under the "cause" analysis, despite the Appellees'

9 claims to the contrary.    Those arguments in pertinent part boil down to: the

10 Bankruptcy Court properly found "cause" based on (a) the "[m]any benefits" of the

11 Stipulation (Debtor Br. at 25:16-17; *see generally id.*, §VI.C.2.; *see also* Committee

12 Br., §V.A.ii.) and/or (b) a belief that the Interstate Insurers were somehow impeding

13 progress in the case (*e.g.*, Committee Br. at 24:15-28:7; Debtor Br. at 22:7).[16]  The

14 Appellees' contentions are unavailing.

15 To start, the Bankruptcy Court did not "find" anything.  (Op. Br., §I.B.)  That

16 is a large part of the problem here, as the Response Briefs illustrate.    Both

17 submissions are full of *post hoc* determinations that the Appellees – based on their

18 own view of the proceedings – ascribe to the Bankruptcy Court, but that the

19

20 ───────────────────────

21 [16] The Committee offers two additional "considerations [in] support [of] a finding of cause": (a) the Released State Court Actions all involve plaintiffs in a state court proceeding "with claims arising exclusively under California law"; and (b) the Debtor "waive[d]" the automatic stay.  (Committee Br. at 30:9-33:7.)  Neither is effective.  If as the Committee argues a state-law claim pending in state court is *per se* "cause" to lift the stay, then the primary function of the automatic stay (creating a "breathing spell" for debtors (Op. Br. at 34:12-19)) would become inoperative – and bankruptcy relief pointless – for debtors like this one that seek Chapter 11 protection ***because*** they are beset by a significant number of state-law claims pending in state court.  (*See* Op. Br., §1.)  None of the caselaw cited by the Committee endorses such a view.  (*Cf.*, *e.g.*, Committee Br. at 31 n.40 ("Cause *may* exist where the party requesting relief … seeks to litigate state law claims in state court." (emphasis added) (quoting *In re Judkins*, 28 F.3d 106, at *2 (9th Cir. 1994) (internal quotations omitted).)  Equally unsupported is the Committee's waiver argument.  A debtor cannot unilaterally "waive the automatic stay's protection," *Takara v. Ass'n of Apartment Owners of Harbor Pointe*, 2014 WL 2761214, at *6-7 (Bankr. D. Haw. June 17, 2014), because the stay does not just exist for the benefit of the debtor.  *Id*. at *6.  The authority cited by the Committee illustrates this point exactly:  "prepetition agreements" to waive the stay are "unenforceable" because "the interests of third parties … were not considered at the time the agreement was made"; it is only "waivers … approved ***after notice and an opportunity for hearing in the context of an earlier bankruptcy case***" that are enforceable (in the ***next*** bankruptcy case).  *In re: BGM Pasadena, LLC*, 2016 WL 1738109, at *3 (Bankr. C.D. Cal. Apr. 27, 2016) (emphasis added) (cited in Committee Br. at 32 n.43).

1    Bankruptcy Court *did not reach*.  (*See generally* Debtor Br., §VI.C.; Committee Br.,

2    §V.A.ii.)  This effectively transforms the absence of analysis from the Bankruptcy

3    Court into whatever "cause" the Appellees can stitch together from any document

4    filed or word spoken at any point in the Bankruptcy Case prior to entry of the Order.

5    (*E.g.*, Debtor Br. at 21:24-26 ("The Order further states that the [Bankruptcy] Court

6    considered all proceedings before the [Bankruptcy] Court, which spanned over a

7    year that this case had been pending as cause for modifying the" automatic stay.))

8    That is not how findings work.  *See, e.g.*, *Spokane Ry. Credit Union v. Gonzales (In

9    re Gonzales)*, 172 B.R. 320, 325 (E.D. Wash. 1994) ("Debtor suggests this court

10   may infer the Bankruptcy Court's findings.  Debtor argues strenuously that the

11   Bankruptcy Court's implied findings support Debtor's good faith.  However, it is

12   difficult … to see how [this court] can review *implied* findings …" (emphasis in

13   original)).

14       On a substantive level, moreover, the Appellees fail to identify any "cause"

15   for stay relief.  This is obviously true with respect to the purported "[m]any benefits"

16   (Debtor Br. at 25:16-17) of the Stipulation, which by necessity cannot support a

17   finding of "cause" because there is no record evidence of them.[17]  (*See supra* §I.B.;

18   Op. Br., §II.A.)  But even less persuasive is the Appellees' divination of "cause"

19   from the Bankruptcy Court's misdirected belief that the Interstate Insurers had

20   engaged in a "strategy of passive aggression" (Committee Br. at 25:6 (internal

21   quotations omitted); *see also* Debtor Br. at 22:10)).  According to the Committee,

22   which leads the charge on this front, *three* actions by the Interstate Insurers (during

23   a bankruptcy that has lasted more than a year) demonstrate what is in the

24   Committee's view a pattern of "intransigence throughout the course of this

25   proceeding" (Committee Br. at 25:3-4): (a) a "joint objection to the POC Motion,"

26   (b) the Interstate Insurers' objection to "the Mediation Motion," and (c) the Interstate

27

28   ─────────────────────
[17] For the avoidance of doubt: nor is there any evidence – competent or otherwise – of "intransigence" (Committee Br. at 25:3) by the Interstate Insurers.  (*See infra*.)

1  Insurers' opposition to the Motion below (*id.* at 25:8-18).  There are a number of

2  problems with this analysis.

3  Most prominently, it is misleading.  Omitted from the Committee's screed is

4  any disclosure that the first two objections were limited in nature and sought specific

5  changes **to facilitate mediation**.  *See* [Bankr. Dkt. 410 at 6:23-7:1 ("Obtaining the

6  additional information sought by the Certain Insurers is critical to … making any

7  meaningful progress in mediation.")]; [Bankr. Dkt. 762 at 2:10-14 ("The Interstate

8  Insurers object on the narrow grounds that the Motion … include[s] overly broad

9  confidentiality provisions that potentially … [could] prevent [the Interstate]

10  Insurers' meaningful participation in settlement and plan-related negotiations.")].

11  Likewise absent is any acknowledgement that at least three bankruptcy courts have

12  adopted the changes proposed by the Interstate Insurers in their limited objection to

13  the "Mediation Motion."  *See* [Bankr. Dkt. 762 at 5 n.2 (listing cases)].  But on a

14  more basic level, the Appellees cite no authority – and the Interstate Insurers are not

15  aware of any – for the proposition that a bankruptcy court's (misplaced) displeasure

16  with a litigant is "cause" for stay relief.  For good reason.  That is the very definition

17  of an abuse of discretion.  *Cf. U.S. v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir.

18  2009).

19      **C.**    **The Bankruptcy Court Was Required to Consider the Interstate**

20             **Insurers' Interests**

21  Both Appellees vociferously dispute the Interstate Insurers' entitlement to

22  follow-on stay relief – and, more fundamentally, the prejudice to the Interstate

23  Insurers in the first instance.  From the Appellees' perspective: (a) the Order does

24  not modify the policies (Debtor Br., §VI.A.; Committee Br., §V.B.ii.); (b) the

25  Released State Court Actions were selected appropriately (Debtor Br., §§ VI.D.,

26  VI.G.; Committee Br. at 44:6-45:8);[18] and (c) the Interstate Insurers can in any event

27

28  ---

[18] Both Appellees intimate that demand letters will as a matter of course provide substantial information about the applicable plaintiff's claim, thus facilitating mediation.  (Debtor Br. at 32:14-22; Committee Br. at 26:7-12.)  This simply is not true.  Nothing in the Stipulation **requires** the provision of substantial (or even sufficient) information

1    move for stay relief if necessary (Debtor Br. at 33:10-18; Committee Br., §V.B.iii.).

2    All three contentions fall short.

3                    1.    The Order Modifies the Policies

4        The Debtor[19] primarily asserts that the Interstate Insurers' policies are not

5    modified because the Order and Stipulation do not "release" or otherwise "insulate

6    the Debtor" from liability but rather "simply limit[] the scope" of the stay to allow

7    liquidation of the Released State Court Action claims.[20]  (Debtor Br. at 15:12, 17:22-

8    25.)  In support, the Debtor emphasizes that its "assets remain subject to a plan" and

9    any "resulting judgments … will both establish liability and monetize the amount of

10   those claims against the Debtor."  (*Id*. at 17:26-18:3.)  Implied – but notably left

11   unsaid – is that the incentive structure of the Interstate Insurers' policies, and thus

12   the policies themselves, remains intact and unaltered.  This analysis is unsound.

13       As a threshold matter, the Debtor inexplicably ignores the Court's

14   Memorandum Order addressing ***this precise*** issue.  *See* Memorandum Order at 5-6

15   (observing that "the Stipulation exposes" the Debtor's insurers "to increased liability

16   by its very nature, because it creates a new set of risks …").  That the Debtor does

17   not grapple with or so much as cite the Memorandum Order indicates the absence of

18   any answer to it, which is itself revealing.

19       More, the Debtor's reasoning fails to account for two critical facts.  ***First***, the

20   Stipulation and Order do not simply "limit[] the scope" of (*i.e.*, lift) the automatic

21   stay; they also ***impose*** a separate injunction for the benefit of the Affiliates, every

22

23   _____

     regarding a plaintiff's claim.  *See generally* [A.194-95].

24   [19] The Committee predominantly directs its arguments at LMI, aside from a statement in passing that the Committee
     "disagrees with" but "recognizes" (in a footnote) "the Court's view" from the Memorandum Order (Committee Br. at

25   37 n.51; *see id*. n.52).  To the extent this comment is intended to challenge the Court's reasoning in the Memorandum
     Order, it misses the mark.  Absent from the Committee's abbreviated discussion is any new argument purporting to

26   explain how or why the reasoning in the Memorandum Order is incorrect or incomplete.  (*See generally id*.)

27   [20] The Debtor further claims that the insurers' alteration arguments "were not raised in the bankruptcy court" and
     therefore cannot be raised on appeal.  (Debtor Br. at 14:2-7.)  It is unclear whether this is aimed at the Interstate
     Insurers, but it is incorrect if so.  The Interstate Insurers in their Objection specifically argued that the Stipulation

28   "free[d] the Debtor and Affiliates from the incentive structure" of the policies and thereby "expose[d] the Interstate
     Insurers to a heightened risk of inflated and/or collusive judgments."  [A.105, ¶35; *see generally* Objection, §II.]

                                        -18-

     Case No. 2:25-cv-02262                          Interstate Insurers' Reply Brief

one of which is a non-debtor that (but for the Stipulation) is not entitled to such relief. (*E.g.*, Opening Br., §II.B.) Not to mention, the stay/injunction indefinitely shields from execution, enforcement, and judgment liens all "non-insurance asset(s)" of the Affiliates (and Debtor) [A.194, ¶5.d.]. This by definition insulates those entities from financial jeopardy – and thus the incentive to undertake a robust defense. (Opening Br., §II.B.)

**Second**, the Debtor's potential liability for the Released State Court Actions is subject to a *de facto* cap.[21] As the Debtor has itself stated, it intends to confirm "a pot plan." (Debtor Br. at 4:23.) The defining feature of such a plan is a limited fund (the pot) seeded by the debtor, and to which creditor claims are channeled. This among other things means the debtor-proponent of a pot plan is freed from its legacy liabilities in exchange for a predefined, capped payment. Confirmation of a similar reorganization plan here therefore would blunt the impact of outsize judgments in the Released State Court Actions – whether the judgments total one dollar or one hundred million dollars, the Debtor's financial exposure would not exceed the amount of its contribution to the plan pot. This, too, lowers the Debtor's incentive to defend and therefore modifies the allocation of risk in the Interstate Insurers' policies. (*See generally* Op. Br. at 32:19-23.)

2.   The Released State Court Actions Are Not Representative

The Debtor and Committee both dismiss as unsupported the Interstate Insurers' challenge to the (un)representative nature of the Released State Court Actions. This concern, they claim, "is a red herring" (Debtor Br. at 30:13) and "unfounded speculation" (Committee Br. at 45:1-2) because the Interstate Insurers "just complained about the selection" (Debtor Br. at 30:16-17) without establishing that the Released State Court Actions are in fact unrepresentative. (*See id.*; *see also*

---

[21] The Debtor's potential liability may also be subject to a more absolute limit. As detailed elsewhere, the Stipulation and Order (and therefore the injunction/stay set forth therein) are perpetual in effect absent a motion to terminate or modify them. (*E.g.*, Op. Br. 32:23-27.)

1    Committee Br. at 44-45.)  The Appellees are wrong.

2         To start, the Committee misunderstands the limits of an appellate record.  It

3    makes much of the fact that "144 days" elapsed between the date the notice of

4    Released State Court Actions was filed in the Bankruptcy Court (July 3) and the date

5    opening briefs were submitted in this Court (November 24), chiding the Interstate

6    Insurers for not using that time to "request information from the [Appellees]" and

7    then including such information in their Opening Brief.  (Committee Br. at 44:13-

8    19.)  But that is of course not how closed (*i.e.*, appellate) records work.  With certain

9    exceptions not relevant here, the record on appeal – and thus, the information that

10   was available for use in the Opening Brief – consists of the record developed before

11   the Bankruptcy Court when it heard the Motion on July 23.  *See supra* §I.B.  That

12   another 100+ days elapsed before the Interstate Insurers submitted their Opening

13   Brief is entirely beside the point.

14        It is also wrong on the facts.  Shortly after the Debtor filed the Motion – only

15   four days later, in fact – the Interstate Insurers took the precise action the Committee

16   claims they did not ever take: the Interstate Insurers "request[ed] information …

17   regarding" the Released State Court Actions (Committee Br. at 44:17-18) by serving

18   the Debtor with discovery requests for documents and testimony on (among other

19   things) the selection of those actions.  (Op. Br. at 14:5-13.)  The Debtor, however,

20   insisted that any evidence it might have on the topic was "protected by or subject to

21   the mediation or [other] privilege" (*id*. at 14:16-17 (internal citations and quotations

22   omitted)) and therefore refused to produce any documents or a deponent.  (*See id*. at

23   14-15.)[22]  Then, the Bankruptcy Court all but quashed the discovery by denying the

24   Interstate Insurers' request for a continuance of the hearing on the Motion.  (*See*

25   *generally id*. at 15:9-18.)  This effectively closed the matter for purposes of the

26

27   ───────────────────
     [22] Notably, the Debtor represents that the Released State Court Cases "were selected by the Parties with the assistance
     of the Mediator."  (Debtor Br. at 30:18-19.)  Given the Debtor's reliance on the mediation to evade discovery into the
28   selection of the Released State Court Actions, its assertion that the Interstate Insurers "offered no evidence" (*id*. at
     30:15-16) on the subject is somewhat rich.

1  record.   And while the Committee apparently is dissatisfied with that outcome,

2  misstating the facts does not change it.

3  More to the point here, the Committee's polemic is a strawman – as are the

4  Appellees' other attacks more generally.    The Interstate Insurers' **actual**

5  representativeness argument centered on incentives: *viz.*, that the Committee's

6  strong incentive to pick high-value claims, coupled with the Debtor and Affiliates'

7  weak (if any) incentives to resist those selections, virtually ensures the Released

8  State Court Actions are not a representative sample.  (Op. Br. at 32:15-33:1.)  Neither

9  Appellee rebutted the substance of this analysis, contenting themselves instead with

10  either ignoring it (*see generally* Committee Br. at 44-45) or assailing it superficially

11  (*see* Debtor Br., §VI.D.).  This is insufficient.  If the Interstate Insurers' position is

12  "unfounded" or "a red herring," then the Appellees should have explained **how** and

13  **why**.  Their failure or inability to do so speaks volumes.

14  ### 3.    The Appellees' Stay Relief Argument Misses the Point

15  Both Appellees claim that the Bankruptcy Court's failure to grant coextensive

16  stay relief to the Interstate Insurers is unobjectionable because the Interstate Insurers

17  are "fully capable of moving for [their] own [stay] relief."  (Committee Br. at 40:3;

18  *see also* Debtor Br. at 33:10-18 (similar).)   The Committee also adds that the

19  Interstate Insurers have "not cited a single example of a bankruptcy court finding

20  that an insurer's 'investigation in response to a settlement demand' or 'contest[ing]

21  a lien on their policies' even violates the automatic stay," from which it concludes

22  that the coextensive stay relief "requested by [the Interstate Insurers] was [neither]

23  necessary [n]or otherwise appropriate."   (Committee Br. at 41:3-10.)   Neither

24  argument is compelling.[23]

---

[23] The Committee in a footnote implies that the Bankruptcy Court did not need to grant the Interstate Insurers' request for follow-on relief because "the possibility of consensual stay relief was specifically addressed by" the Debtor at the hearing (Committee Br. at 40 n.55), quoting a snippet of the hearing transcript where counsel for the Debtor states: "we're open to stipulating to relief from stay … This is not any kind of gotcha."  (*Id.* (quoting [A.153, at 19:20-22] (emphasis omitted)).)  This is yet another misleading quotation.  Omitted is the very next statement from Debtor's counsel, observing: "And I believe, in talking to counsel for the committee, they[] … are willing to deal with that issue *as it comes up*.  *Right now*, it's kind of like, well, *not really sure what they think they need stay relief for*. […]  So

1    First, the Interstate Insurers *already* sought stay relief.  Pointing out that they

2  are "fully capable" (Committee Br. at 40:3) of engaging in the exercise again

3  answers an argument the Interstate Insurers did not make.  More important, that

4  response is an insufficient defense of the Bankruptcy Court's failure to grant such

5  relief on the first pass.  *See Hinkson*, 585 F.3d at 1261-62.

6    Indeed, the Committee appears to have forgotten its own position on the

7  matter.  According to Committee counsel, the Interstate Insurers "would have to free

8  themselves from any constraints to the Bankruptcy Court" [Dkt. 59 at 9:5-6

9  (Kugler)] to "participate in" the Released State Court Actions [*id*. at 9:2 (The

10  Court)].  *But see* [*id*. at 9:14-16 (equivocating) (Kugler)].  That perspective rather

11  flawlessly illustrates the need for follow-on stay relief here, irrespective of the

12  absence of any "example[s] of a bankruptcy court" (Committee Br. at 41:4)

13  endorsing the Committee's view.

14  **D.    "Right for Any Reason" Does Not Save the Order**

15    Each of the Debtor and Committee endeavors to salvage the Order by

16  invoking either the "right for any reason" doctrine (Debtor) or the "harmless error"

17  standard (Committee).  Those principles, the Appellees claim, mean the Order

18  should be affirmed even if the Bankruptcy Court failed to find facts (both Appellees)

19  and/or analyze the Stipulation as a settlement (Debtor).  The Appellees are wrong.

20    At the outset, "right for any reason" does not – and cannot – apply to this

21  Appeal.  Under well-settled Ninth Circuit law, employment of that doctrine is subject

22  to (at least) two barriers.  Most obvious is the state of the record.[24]  That is, the

23  appellate court cannot "affirm on any ground supported by the record" without an

24  adequate record to review for support.  *See McClure v. Life Ins. Co. of N. Am.*, 84

25  F.3d 1129, 1133 (9th Cir. 1996) (stating that application of the rule depends in part

26

27  we're not really sure.  ***We're not there yet***."  [A.153-54, at 18:22-19:3 (emphasis added).]

28  [24] It is of course also imperative for the lower court to have reached the ***right*** result in the first instance.  That did not happen here.  *See generally* Op. Br. §II.A

1   "on the adequacy of the record"); *In re Howell*, 731 F.2d 624, 627 (9th Cir. 1984).

2   Related but separate is the scope of review, which traditionally is limited to appeals

3   that raise predominantly legal questions and thus do not intrude on the trial court's

4   fact-finding function. *Golden Nugget, Inc. v. Am. Stock Exch., Inc.*, 828 F.2d 586,

5   590 (9th Cir. 1987). Where an appeal fails either of these conditions, the doctrine

6   does not apply, and the order should be remanded. *See MacIntyre v. Carroll Coll.*,

7   48 F.4th 950, 956 (9th Cir. 2022).

8           This Appeal fails both. To start, there is ***no*** record – much less an adequate

9   record (*see supra* §I.B.) – to support affirmance. This alone precludes application

10  of the doctrine as a matter of law. *Cf., e.g.*, *Carroll Coll.*, 48 F.4th at 956; *Corder v.*

11  *Gates*, 947 F.2d 374, 383 (9th Cir. 1991) ("We face a record that is entirely devoid

12  of information …"). But even if this Court were to consider the second prong (which

13  it should not), the result would not change. Discerning whether the Stipulation is

14  "fair and equitable" (a prerequisite to its approval as a settlement) is a fact question

15  (*see* Op. Br. at 26:13-28) that would "require close review of the [purported] record,"

16  *Delgado,* et al*. v. ILWU-PMA WELFARE PLAN*, 2026 WL 161403, at *2 (9th Cir.

17  Jan. 21, 2026), making affirmance on that ground improper. *See, e.g.*, *id.*; *Corder*,

18  947 F.2d at 383. And while the Bankruptcy Court's failure to make findings is a

19  legal issue, ***affirming*** without findings would inescapably involve the resolution of

20  material fact questions (*e.g.*, whether there is "cause" for stay relief) that are just as

21  "inappropriate … to reach" on appeal, *Wendell v. GlaxoSmithKline LLC*, 858 F.3d

22  1227, 1239 (9th Cir. 2017). *See id.* ("[T]he issues [appellee] raises would require

23  extensive fact finding, and are matters on which the district court did not rule. It

24  would be inappropriate for us to reach these issues, and we decline to do so."). In

25  short, the Order cannot be affirmed on any ground.

26          Nor is the absence of findings "harmless error" (Committee Br. 43:10).[25]

27

28  ---
    [25] To the extent the Committee or the Debtor attempts to dismiss as "harmless error" the Bankruptcy Court's failure to analyze the Stipulation under the appropriate standard, they are incorrect. The Ninth Circuit has specifically held that "[a]pplication of an incorrect legal standard alone constitutes an abuse of discretion … and this type of error is

Under well-settled law, a trial court's failure to make findings **_may_** be harmless error only "**_if_** a full understanding of the issues could be reached without the aid of findings." _Huard-Steinheiser, Inc. v. Henry_, 280 F.2d 79, 84 (6th Cir. 1960) (using the phrase "prejudicial error" (emphasis added) (internal citations and quotations omitted)); _see also Associated Elec. Coop., Inc. v. Mid-America Transp. Co._, 931 F.2d 1266, 1272 (8th Cir. 1991) ("[T]he failure to make findings … may be harmless error where … most relevant facts are undisputed and the law can be applied without the district court's assistance."). _Accord Swanson v. Levy_, 509 F.2d 859, 861 (9th Cir. 1975) ("[A] failure to make the necessary findings does not require remand if a complete understanding of the issues may be had without the aid of separate findings."). But if such an understanding cannot be reached, including because the factual record is incomplete or too voluminous, the error is not harmless and therefore requires remand. _See Hypoint Tech., Inc. v. Hewlett-Packard Co._, 869 F.2d 1491, at *2-3 (6th Cir. Feb. 21, 1989) (voluminous record); _Marshall v. Commissioner_, 456 F.2d 1189, 1191 (2d Cir. 1972) (incomplete record). _Accord Graves v. Myrvang (In re Myrvang)_, 232 F.3d 1116, 1124 (9th Cir. 2000) (vacating and remanding after seemingly _sua sponte_ noting the absence of "express findings" from the bankruptcy court); _Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa)_, 674 F.3d 1083, 1093 (9th Cir. 2012) ("[W]e follow our ordinary procedure when a necessary factual finding is absent, and remand …").

So, too, here. Because there is no trial record to review (_see supra_ §I.B.; Op. Br., §II.A.) – and because affirmance effectively would require this court to act as the finder of fact – the Bankruptcy Court's failure to make findings of fact and conclusions of law is not harmless error and cannot be treated as such. _Cf. FTC v. Burke_, 617 F. App'x 667, 668 (9th Cir. 2015) ("[W]e decline to act as finders of fact in the first instance, on a bare record …"). Instead, vacatur and remand is required.

---

not subject to review for harmlessness." _In re Apple Inc. Device Performance Litig._, 50 F.4th 769, 783 (9th Cir. 2022).

1    *See Kekauoha-Alisa*, 674 F.3d at 1093.

2    **II.    THE APPELLEES DID NOT MEANINGFULLY RESPOND TO THE**
3    **PROPOSED INSTRUCTIONS**

4    Despite submitting briefs that span nearly 100 pages in total – and repeatedly
5    accusing the Interstate Insurers of obstructionism (*e.g.*, Debtor Br. at 23:4-10;
6    Committee Br. at 25) – neither Appellee responds in any meaningful fashion to the
7    one, clear path to minimizing further proceedings on the Interstate Insurers' appeal
8    of the Order: the Proposed Instructions.  In fact, the Committee does not address the
9    Proposed Instructions at all.  And while the Debtor insinuates that any change to the
10   Stipulation "risk[s] upsetting the negotiated agreement," it does not discuss the
11   Proposed Instructions specifically beyond protesting that they are "unnecessary" and
12   "self-serving" (Debtor Br. at 39:23-26).   These speculative predictions of harm
13   should not prevent this Court from remanding with the Proposed Instructions, as the
14   *BSA* appeal demonstrates.  *See In re BSA*, 137 F.4th 126, 169 (3d Cir. 2025).

15   There, the Interstate Insurers and certain of their affiliates appealed the order
16   confirming BSA's plan due to (among other things) an inadequate judgment
17   reduction mechanism.  *Id*. at 151.  The Interstate Insurers in their opening brief thus
18   proposed narrow, blue-penciled changes to the then-current judgment reduction
19   clause.  *See id*.  Certain of the appellees strenuously opposed the Interstate Insurers'
20   language, arguing that it would "fundamentally alter the economics of the" post-
21   confirmation trust and "negate[] the heavily negotiated global resolution among"
22   BSA and the claimants.  *In re: Boy Scouts of America and Delaware BSA, LLC*, Case
23   No. 23-1664 (3rd Cir. Oct. 27, 2023), ECF 124-1 at 19.

24   The Third Circuit nevertheless vacated and remanded with instructions for the
25   bankruptcy court to adopt the Interstate Insurers' changes.  *BSA*, 137 F.4th at 169.
26   The bankruptcy court did so following issuance of the mandate.  And despite the
27   appellees' earlier forecasts of calamity, the trust in *BSA* has been operating ever
28   since.  *E.g.*, *In re: Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-

1    10343 (Bankr. D. Del. Jan. 20, 2026), ECF 133396.

2    **CONCLUSION**

3    WHEREFORE, the Interstate Insurers respectfully request entry of an order:

4    (a) either (i) vacating the Order of the bankruptcy court and remanding with the

5    Proposed Instructions or (ii) reversing the judgment and Order of the bankruptcy

6    court and remanding the cause for further proceedings; and (b) granting to the

7    Interstate Insurers such other and further relief as is right and just.

8

9                                        **PARKER, HUDSON, RAINER & DOBBS LLP**

10   Dated: January 26, 2026      By:    */s/ Harris B. Winsberg*
                                         Harris B. Winsberg (admitted *pro hac vice*)
                                         Matthew M. Weiss (admitted *pro hac vice*)
11                                       Matthew G. Roberts (admitted *pro hac vice*)
                                         Brian C. Aton (SBN 339266)
12                                       303 Peachtree Street NE, Suite 3600
                                         Atlanta, GA 30308
13                                       Telephone: (404) 523-5300
                                         Facsimile: (404) 522-8409
14                                       Email: hwinsberg@phrd.com
                                                mweiss@phrd.com
15                                              mroberts@phrd.com
                                                baton@phrd.com
16
                                         -and-
17
                                         Todd C. Jacobs (admitted *pro hac vice*)
18                                       John E. Bucheit (admitted *pro hac vice*)
                                         Two N. Riverside Plaza, Suite 1850
19                                       Chicago, Illinois 60606
                                         Telephone: (312) 477-3305
20                                       Email: tjacobs@phrd.com
                                                jbucheit@phrd.com
21
                                         **NICOLAIDES FINK THORPE MICHAELIDES**
22                                       **SULLIVAN LLP**

23                                       Matthew C. Lovell (SBN 189728)
                                         Laura H. Smith (SBN 136117)
24                                       101 Montgomery Street, Suite 2300
                                         San Francisco, California 94101
25                                       Telephone : (415) 745-3779
                                         Facsimile : (415) 745-3771
26                                       Email : mlovell@nicolaidesllp.com
                                                 lsmith@nicolaidesllp.com
27
                                         *Attorneys for Interstate Fire & Casualty Company*
28                                       *and National Surety Corporation*

**CERTIFICATION PURSUANT TO FED. R. BANKR. P. 8015**

The undersigned hereby certifies that this document, which was prepared using Times New Roman 14-point typeface, contains no more than 10,000 words and complies with the word limit of Federal Rule of Bankruptcy Procedure 8015(a), as modified by the *Stipulation and Order Setting Briefing Schedule* [Dkt. 56]. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on January 26, 2026.


> */s/ Harris B. Winsberg*
> Harris B. Winsberg